DOWLING *et al. v.* WHITES LUMBER & SUPPLY CO.

(Division B. May 14, 1934. Suggestion of Error Overruled June 11, 1934.)

[154 So. 703. No. 31146.]

Gabe Jacobson, of Meridian, and G. Garland Lyell, of Jackson, for appellants.

**Victor W. Gilbert** and **Chas. B. Cameron**, both of Meridian, for appellee.

Argued orally by **Gabe Jacobson** and **G. Garland Lyell,** for appellant, and by **V. W. Gilbert,** for appellee.

**Griffith, J.,** delivered the opinion of the court.

On February 6, 1932, appellants made a contract with one Turner for the construction and completion of a brick veneer residence, the work to be done according to plans and specifications made a part of the contract, and in a good, substantial, and workmanlike manner. The contract price was to be paid in one sum upon the completion of the work. The contractor was without financial means, and the material and money to do the work was furnished by appellee. The contract stipulated that the residence should be completed ''at the earliest possible time.''

There was no supervising architect, but the work was done under the daily observation of appellants, in the course of which many changes were made in the details of the plans at the instance of appellants, and some work was required by them to be remedied as the building progressed. On June 16, 1932, the contractor tendered the building to appellants as completed according to contract; but appellants were not at all satisfied, and they procured the services of an experienced and reputable architect to make an inspection and report. He reported that the building had not been completed in substantial compliance with the contract, and listed more than fifty items wherein the work was inferior to that required; three or four of these items being of a distinctly serious and definitely unacceptable nature, as will be mentioned later.

Appellants thereupon notified the contractor that the building had not been completed according to contract requirements and that they declined to accept and pay

for the work. Appellants were within their rights in rejecting the house at that time, and the chancellor so stated in his opinion.

There was an arbitration provision in the contract, and on June 21, 1932, the contractor requested an arbitration of the matter, stating that the request for arbitration was made in order ''that I may comply strictly with the terms of the contract entered into between us and as required by the contract itself.'' This offer of arbitration was refused by appellants; their reply being that they had already rejected the work, that their rejection was final, and that there remained nothing to arbitrate. In a few days thereafter, appellee sought to adjust the matter with appellants. Appellee persuaded appellants to an interview and to a further inspection of the house in company with another experienced and reputable builder, at which time appellee proposed to employ in behalf of the contractor another competent builder to complete the work, taking care of all the defects theretofore itemized at appellants' instance. Appellants also rejected that proposition, and on July 13, 1932, in response to some further efforts at adjustment, appellants wrote appellee that their decision to reject the house and not to accept it would not be changed.

It was the position of appellants that the work was so inherently defective that the building could not be made to comply with the contract; that to do so it would be necessary to tear down all the work and to rebuild from the ground up. That was their position at the time of the tender in June, and it was explicitly adhered to without variation throughout all the subsequent interviews and communications, and it was their position on the trial of the case.

After the final refusal of appellants in July to consider any proposition whatever except a final rejection of the work—a refusal to consider any effort towards correcting the defects—appellee, being of the opinion that the

defects could be remedied, employed a competent builder to do so. This builder entered upon the work about August 15, 1932, and completed the same on September 15, 1932, at which time the house was again tendered to appellants and was again refused. Thereafter on November 9, 1932, the contractor having assigned all his interest to appellee, a suit was filed by appellee to enforce the collection of the contract price, a decree was rendered in appellee's favor, and appellants have brought the case to this court.

The chancellor found as a fact that the house when tendered in September, 1932, complied strictly with every term and specification in the contract as written. He made a suitable deduction for the delay and for a small variation in the driveway. It has been observed that there was no fixed time for the completion of the work. The chancellor therefore acted within the authority of law in making a deduction for the delay, and this takes the matter of delay out of the case, so far as any issue upon that feature is concerned. There is thus left only the decisive issue whether the house was according to contract when tendered in September, and, since the chancellor found that issue of fact in appellee's favor, and his finding is supported by the evidence, there is an end of the case, so far as concerns any power on our part to interfere.

Appellants contend, however, that they had a right to repudiate or renounce the contract and to stop the work under it at any time, and, since they did declare in June that no further work must be done and that they would not consent to or accept any further work, the contractor was bound to stop then and sue for his damages, if any; that he could not thereafter go forward and complete the work and sue for the contract price, as was done here. Undoubtedly it is the settled general rule that, when the owner notifies a building contractor that the owner repudiates or renounces the contract and explicitly directs

the contractor not to do anything further under it, the contractor cannot go on and complete the work and sue for the full contract price. The authorities on the point are gathered in a note 66 A. L. R. p. 746 et seq. See, also, 13 C. J. pp. 655, 656; Gibbons v. Bente, 51 Minn. 499, 53 N. W. 756, 22 L. R. A. 80. And certainly the rule stands good when the contract is executory only, the work not having been entered upon.

Two reasons are given as furnishing the grounds for the rule. One is that the contractor is interested only in the profit which he will make out of the contract, and, if he be given his profit in damages, he is made whole. The other is in the general principle that a person whose contract has been breached must so conduct himself as not to enhance or increase the loss or damage to the opposite party. The validity of the stated rule may be demonstrated by an illustration: We will suppose that an owner has given a contract to erect a house to be used in a certain business, and the house is so designed as to be suitable for no other purpose, and before work is begun the Legislature passes a statute prohibiting the business for which the house was to be used. There the law permits the owner to renounce his contract and to pay damages, rather than that his damages shall be further enhanced by the completion of the useless work.

But the rule runs only so far as run the reasons which give it existence. When the work has already been entered upon and has progressed to the extent that to stop will leave a situation wherein it will be impracticable to attempt a dependable estimate of the contractor's damages, or where to complete the work will diminish the damages to the owner, or at least will not enhance his damages, the contractor may go forward and complete the work. Mr. Williston calls attention to this distinction and gives some illustrations of it in 3 Williston on Contracts, section 1299.

In the case before us, admitting every defect claimed

by appellants when the house was tendered in June, nevertheless, the work was then at least seventy-five per cent. complete; and of that part incomplete the principal defects were in the fact that there was not a sufficient number of piers under the house, the piers were not located under the partition walls, the sills were insufficient both in location and in strength, and some of the windows allowed water to enter the structure. This defect in the piers and sills caused the floor to sag and to become unlevel. Applying common knowledge, we know that not to correct this stipulation, to do no further work, would cause the floors and the entire inside superstructure to sag further day by day and to become generally more and more out of level, and not to correct the windows promptly would cause water damage. To correct the work and to complete it, under the facts here presented, did not enhance damages, but prevented damages, and the contractor was within the law in completing the work, unless, of course, the other position taken by appellants were sustainable, to-wit, that the work could be done so as to actually satisfy the requirements of the contract only by tearing down the whole structure and beginning anew; but, as already mentioned, the finding of the chancellor, supported by sufficient evidence, has expressly determined the contention last stated adversely to appellants.

Appellants contend finally that the conduct of the contractor was such as to convict him of gross and intentional negligence; that is to say, of a willful design to chea and defraud appellants. As to this it is to be said, first, that no such charges against the contractor are sufficiently made in the pleadings; second, the proof is not sufficient to support such a charge, for such proof must be clear and convincing; and third, the chancellor did not affirmatively so hold as evidenced by his opinion and decree. The proof is sufficient to show incompetency on the part of the contractor, but not willful negligence or actual

fraud, although the entire case does introduce grave suspicions that fraud was present. It is to be regreted that an incompetent builder was employed and that on account of his mistakes such an unfortunate situation arose as this case discloses, but we are unable to see any reversible error in the record, and the decree must be affirmed.

Affirmed.