I. B. S. Mfg. Co. et al. *v.* Dependents of Cook

No. 41753          May 22, 1961          130 So. 2d 557

*Smallwood, Darden & Summers,* New Albany, for appelleants.

*J. A. Travis, Jr., Barney E. Eaton, III, J. E. Boone,* Jackson, for appellees.

KYLE, J.

This case is before us on appeal by I. B. S. Manufacturing Company, of New Albany, Mississippi, employer, and United States Fidelity & Guaranty Company, its insurance carrier, from a judgment of the Circuit Court of Union County affirming an order of the Workmen's Compensation Commission awarding death benefits to the six minor children of Mrs. Paul (Bithy) Cook, an employee of I. B. S. Manufacturing Company, whose death occurred on May 28, 1957. The cause of death, stated on the death certificate, was pulmonary edema, congestive heart failure - heart disease, type undetermined.

The record shows that Mrs. Cook, who was known as Inez Bithy Cook, was born on February 25, 1921; that she was married to James Paul Cook on July 30, 1938; and that seven children were born of the marriage, six of whom were living at the time of their mother's death. The oldest living child was Betty Lou who was born on August 2, 1941. The youngest child, Nelta Marie, was born July 28, 1954. Mrs. Cook was 36 years of age at the time of her death. Her husband, at the time of her death, was engaged in farming as a sharecropper on land owned by Marlin Stack in Union County.

The record shows that Mrs. Cook filed an application for employment with I. B. S. Manufacturing Company, which was operating a garment factory at New Albany, Mississippi, on April 4, 1957. Prior to that time she had

never done any type of work except farm work. In the application form which she signed there appears the following questions and answers: "Have you ever had heart trouble?" Answer, No. "Have you been to a doctor lately?" Answer, No. No physical examination was required of the applicant before she was employed. She began work at the garment factory on April 8, 1957. The job assigned to her was setting cuffs in the sewing department. She was absent from the plant four days beginning April 23 and ending April 26. On April 29 she returned to work, and she made a statement at the office that she was suffering from nervousness and had seen Dr. R. E. Shands. On April 30 she was assigned to work tacking sleeves, and continued to work at that job through Thursday, May 23. She was unable to return to work at the garment plant on May 24. She was carried to the hospital on May 27, and died about 7:15 Tuesday evening, May 28.

James Paul Cook testified that his wife went to work at the garment factory on April 8, because she had to work to help provide for the family; that his crop for the preceding year was short, and when the crop was gathered he came out in debt to Mr. Stack; and that he and the children were dependent upon her earnings for a living. Cook stated that prior to the time that his wife went to work at the garment plant she was "doing pretty well", so far as her physical condition was concerned. She went to the Shands Hospital on April 23, because she had some kind of nervous spell. She returned to her work at the plant the next week; but when she came home in the evening she was very nervous, and seemed like she was "all wrecked up." The last Tuesday that she worked, which was Tuesday May 22, she came home and lay down on the bed, and she told him that she "had a spell - just a blackout is all I know," while she was at work at her machine at the garment factory, and that one of the ladies carried her to the plant nurse, and the

nurse laid her on a cot, and that was all she knew about it. Cook stated that his wife's breath was short after that; that she complained about a hurting in the chest, and when she came in from the factory the last day that she worked, her feet were swollen and her legs were pretty well swollen up to the waist; that she became nauseated when she tried to eat and complained of a hurting in her chest; and that her breath was short. She was carried to the hospital on Monday, May 27, and died about twenty-four hours later. On cross-examination Cook admitted that his wife had been sick at times, that she had had flu and pneumonia, and that she had one weak lung. But he insisted that he did not know that she had had a heart condition for a number of years.

Mrs. Janie Maybelle Wells testified that she worked at the garment plant during the year 1957, and that she worked with Mrs. Cook during the week ending May 25, 1957; that the work Mrs. Cook was doing was cuff stitching; that during the last few weeks of her life Mrs. Cook appeared to be losing weight; that Mrs. Cook talked to her at the noon hour the last two days she worked; and that Mrs. Cook told her that she was sick and nauseated, and that one could see that she was sick; that Mrs. Cook's feet and legs were swollen. Mrs. Wells stated that Mrs. Cook told her that she had some kind of spell, probably fainted when she was at work, and she didn't know anything, and when she came to herself, the nurse and supervisors were with her and carried her to the nurse's office; that she had that spell the last week that she worked. On cross-examination Mrs. Wells stated that Mrs. Cook told her that it was hard for her to meet the production schedule, that she had to put everything she had in it to meet the production schedule. On cross-examination Mrs. Wells stated that her own work at the plant was cuff setting, which was a kind of slow, steady work; that the work which Mrs. Cook was doing was cuff stitching; and that was a harder job than cuff setting because the

production was so much higher, "so high you were just moving around real quick all day."

Mrs. Virginia Taylor, who rode to work in the same automobile that Mrs. Cook rode in, testified that Mrs. Cook said something to her about her feet being swollen, and that Mrs. Cook told her that on one occasion "she just kinda went to sleep and fell over against her machine," but she did not know what was wrong.

The superintendent of the plant and the plant nurse testified that they had no record of Mrs. Cook having a fainting spell while at work at any time during the last week she was employed at the garment plant; and the supervisor, or floor lady, who was on duty at that time testified that nothing of that kind occurred. The superintendent of the plant testified that the operation of tacking sleeves, to which Mrs. Cook was assigned on April 30, was a machine operation performed while she was sitting; that the training period on that particular job was 14 weeks; and that Mrs. Cook was expected to attain 100 per cent efficiency by the end of the training period. He stated that the plant considered the operation which Mrs. Cook was engaged in as one of the easy operations.

Five doctors testified during the hearing before the attorney-referee.

Dr. William H. Rosenblatt, who had examined the x-ray pictures of Mrs. Cook's chest, testified that, in his opinion, the cause of death was "specifically chronic pulmonary heart disease, secondary to long standing chest deformity and/or long disease, and I'd be of the opinion that her terminal episode" was that described in the death certificate, namely, "congestive heart failure and pulmonary edema." As to the relation between the work activities and her death, the doctor said: "I would say that her work activities probably aggravated her condition, and I will elaborate to this extent: Most anything this lady would have done would have aggravated her underlying severe cardiac disease. The type of heart

disease that she manifested is known to be a relentlessly progressive disease of the heart muscle, which notoriously responds very poorly, if at all, to the customary, usual measures directed at treatment. Pulmonary heart disease is a heart ailment which is secondary to some type of derangement in the pulmonary circuit, pulmonary vascular circuit, either from fibrosis in the lungs, blockage of pulmonary arteries, or from marked chest deformity which interferes with the normal cardiovascular mechanics, or what we call hemodynamis. There results a marked increase in the work load placed on the right side of the heart, and in order to overcome whatever pathology is responsible for the condition, over a period of years the right side of the heart, specifically the right ventricle, enlarges and finally fails.''

Dr. Thaddeus LaBeckie, who was called to testify as an expert witness on behalf of the claimants, in answer to hypothetical questions, stated that, in his opinion, emotional strain was a factor which contributed to the death of Mrs. Cook.

Dr. R. E. Shands, who was called to testify as a witness on behalf of the employer and the insurance carrier, stated that he had treated Mrs. Cook off and on for a period of several years. He stated that he had treated her on August 14, 1956, approximately eight months prior to the date of her employment by the garment factory, and that she was short of breath and showing edema at that time. He stated that he treated her again on April 23, 1957, about two weeks after she had begun to work at the garment plant; that he found at that time that she was agitated and disturbed, with shortness of breath; that her urine was heavy with albumin, and that some degree of cardiac failure was already present for which digitalis was continued. Dr. Shands found no causal connection between Mrs. Cook's work activity at the plant and her death. When asked if he could determine with any degree of medical certainty the cause of

death, he replied: "Well, its purely hypothetical. There was so much wrong with the patient; but from the hearsay evidence of the way she died in my opinion she died of heart failure."

Dr. Thomas E. Wilson, testifying as an expert witness for the employer and its insurance carrier, stated that in his opinion the final failure of Mrs. Cook's cardiopulmonary system was due to pneumonia. The doctor said: "I believe that the nephritis and the strain on the heart, corpulmonale, caused the appearance of her final edema in the legs and in the lungs." On the issue of whether employment rather than lack of hospitalization might have shortened Mrs. Cook's life, Dr. Wilson stated that it was at best a possibility, but that in all probability her employment was beneficial. Dr. Wilson said: "This is a different type of heart disease. This is not angina pectoris or coronary artery disease. This is gradually, slowly, definitely progressing disease, and whether they get out and work or whether they sit around home doesn't make a great deal of difference." Dr. J. Manning Hudson, who testified as an expert in internal medicine, found no causal relation between Mrs. Cook's work and her death. He stated: "My opinion as to the primary cause of death in this patient is that she died of bronchial pneumonia as the primary cause of death, or pulmonary infection."

The attorney-referee stated in his opinion that there were areas of conflict in the testimony of certain witnesses which could not be reconciled, but that these areas of conflict were not such as to be controlling in the final determination of the cause. The attorney-referee found that the work activities of the deceased incident to her employment aggravated the pre-existing disease with which she was afflicted, so as to bring about an illness culminating in her death on May 28, 1957; and that her death arose out of and in the course of her employment within the meaning and contemplation of the Mississippi

Workmen's Compensation Law. The attorney-referee found that the six minor children were dependents of the deceased, but the husband, James Paul Cook, was not a dependent. The attorney-referee therefore entered an order awarding compensation or death benefits to the six minor children of the deceased.

The findings and award of the attorney-referee were affirmed by the full commission on April 5, 1960; and the order of the commission was affirmed by the circuit court on appeal.

It is first argued on behalf of the appellants that the circuit court erred in affirming the orders of the attorney-referee and the commission finding that there was a causal connection between the employment and the death of Mrs. Cook.

But it can be readily seen from what we have stated above that there was a definite conflict in the testimony of the five medical experts who testified during the hearing; and this Court has held in many cases that the commission is the trier of the facts, and that this Court will not reverse the findings of the commission if there is substantial evidence to support those findings.

In this case, as in Cole v. Superior Coach Corporation, 234 Miss. 287, 106 So. 2d 71, the medical testimony cannot be reconciled. The commission had a right to evaluate it, and to accept that of the appellee. The issues with reference to an alleged injury of this type are properly within the province of the medical experts; and where there is a conflict in such evidence, its valuation and credibility, with reference to the existence, nature and etiology of an injury or disease, are issues for the commission acting upon such medical testimony. 2 Larson, Workmen's Compensation (1952), Secs. 79.50—79.54.

It is also well established by prior decisions of this Court that, where the work of the employee aggravates a pre-existing disease or condition, the resulting

injury is compensable. Ingalls Shipbuilding Corporation, et al. v. Byrd, 215 Miss. 234, 60 So. 2d 645; Cowart v. Pearl River Tung Company, 218 Miss. 472, 67 So. 2d 356; Pearson v. Dixie Electric Power Association, 219 Miss. 884, 70 So. 2d 6.

We think that it cannot be said that there is no substantial evidence in the record to support the findings of the attorney-referee and the commission that the work activities of the deceased incident to her employment aggravated the pre-existing heart disease, so as to bring about the illness culminating in her death.

It is next argued on behalf of the appellants that the circuit court erred in affirming the findings of the commission for the reason that those findings were based in part on opinion evidence of the claimant's medical experts given in answer to hypothetical questions embodying facts assumed but not proved. But we think there is no merit in that contention.

Finally, it is argued that the circuit court erred in failing to reverse the order of the commission and dismiss the appellees' claim on the ground of material fraud on the part of Mrs. Cook in stating in the application for employment, which she filed on April 4, 1957, that she had never had heart trouble. In support of that contention the appellants' attorneys point to the statement in the death certificate which shows as cause of death "(a) pulmonary edema, (b) congestive heart failure, (c) heart disease, type undetermined", and the statement of Dr. Lester C. Willis, dated January 18, 1959, to the effect that he attended Mrs. Cook during her terminal illness, and that, "she gave a history of heart disease for many years for which she had been under the care of another physician," and another statement of Dr. Willis, not dated, in which it is said that Mrs. Cook stated to him that "she had had similar attacks previously, but none as severe as this one."

But we think that it cannot be said that the commission erred in refusing to dismiss the appellees' claim for death benefits because of the alleged fraudulent misrepresentation by Mrs. Cook as to the condition of her health at the time she filed her application for employment. It is well settled by the decisions of this Court that a party charging fraud must prove it by evidence which is clear and convincing. Carter v. Eastman, Gardner & Company, 95 Miss. 651, 48 So. 615; Dowling v. Whites Lumber and Supply Company, 170 Miss. 267, 154 So. 703; Martin v. Gill, 182 Miss. 810, 181 So. 849; Mayfield Motor Co. Inc. v. Parker, 222 Miss. 152, 75 So. 2d 435. Yet the appellants offered no evidence, other than the unsworn statements mentioned above to substantiate their charge of fraud. The application which Mrs. Cook filed with the garment factory on April 4, 1957, was an application for a job, and not an insurance policy. The printed form of the application which she was required to sign showed that the applicant agreed that the information given was subject to check, and that the applicant understood that mistatements on the application would be cause for dismissal. There is ample evidence in the record to show that Mrs. Cook at the time of her death had chronic pulmonary heart disease. But the proof that Mrs. Cook knew that she had heart trouble at the time she filed her application for employment at the garment factory, other than Dr. Willis' unsworn statements, is singularly lacking.

Dr. Willis' statement in the form of a letter dated more than a year and a half after Mrs. Cook's death appears to be nothing more than an off-the-cuff summary of information which he or a hospital attendant obtained from Mrs. Cook concerning prior illnesses when she was admitted to the hospital a few hours before her death. Dr. Willis was not called to testify as a witness in the case, so that he might be interrogated about the statement or about what Mrs. Cook actually said at the time

she gave the history of her illness. No other doctor testified that he had treated Mrs. Cook over a period of many years for heart disease. No witness testified that Mrs. Cook ever suffered a "heart attack", as that term is understood by laymen, prior to April 4, 1957. Dr. Shands, who treated Mrs. Cook for an illness in August 1956, did not testify that the illness for which he treated her at that time was a heart disease; and so far as this record shows that was the last time Mrs. Cook received medical treatment of any kind prior to the date of her employment by the garment factory. Dr. Wilson stated that the type of heart disease which Mrs. Cook seemed to have had was "a different type of heart disease" from the usual types. Dr. Rosenblatt described the disease as "a relentlessly progressive disease of the heart muscle." Mrs. Cook's brother, Herman Easley, testified on cross-examination that Mrs. Cook had always been "weakly like", but at the time he saw her about two months before her death, she was "in pretty fair health."

The attorney-referee and the commission were evidently of the opinion that the appellants' evidence relating to the alleged fraud was insufficient to justify a finding that Mrs. Cook knew, on April 4, 1957, that she was then suffering from a heart disease, and that her answers to the two questions mentioned above were representations known to be false; and the attorney-referee and the commission refused to hold that the answers were fraudulent. We are unable to say that the commission was wrong.

We express no opinion here as to what effect a finding by the commission of actual fraud in the procurement of employment, based upon clear and convincing evidence, would have on the rights of an employee to recover disability compensation under the Mississippi Workmen's Compensation Law.

We find no error in the record which would justify a reversal of the judgment of the lower court, and the judg-

ment of the lower court is therefore affirmed and the cause remanded to the commission for the enforcement of the award.

Affirmed and remanded.

*McGehee, C.J.,* and *Arrington, Ethridge* and *Rodgers, JJ.,* concur.