487 So.2d 228 (1986)
EMERSON ELECTRIC COMPANY
v.
Bessie Mae McLARTY.
No. 55460.
Supreme Court of Mississippi.
April 23, 1986.
S.T. Rayburn, Richard C. Coker, Sumners, Hickman & Rayburn, Oxford, for appellant.
D. Briggs Smith, Smith & Phillips, Batesville, for appellee.
Before PATTERSON, C.J., and DAN M. LEE and ROBERTSON, JJ.
DAN M. LEE, Justice, for the Court:
Bessie Mae McLarty was awarded apportioned Workers' Compensation benefits by an administrative judge on January 26, 1982. On petition for review before the full Workers' Compensation Commission, the order of the administrative judge was affirmed. Appeal was made to the Circuit Court of Lafayette County where the circuit court judge affirmed the decision of the full commission.
Appeal is now perfected to this Court and the following assigned as error:
(1) The lower court erred in failing to recognize and apply the defense of estoppel by fraud or misrepresentation in the procurement of employment, thereby barring (sic) Workmen's Compensation benefits; and,
(2) The lower court erred in upholding the award of the Mississippi Workmen's Compensation Commission for additional temporary total, medical and permanent partial disability benefits from and after March 1, 1978.

I.
In 1969, Bessie Mae McLarty accidentally injured her back while employed by the *229 Sam Shainberg Co. in Memphis, Tennessee. As a result, in 1970, McLarty underwent surgery in Tupelo, Mississippi, during which it was necessary that a disc be removed from her back. On her Workmen's Compensation Claim arising from that accident, McLarty was determined to have sustained a 15 to 20% disability to her body as a whole. McLarty returned to Shainberg's where she worked until 1972, at which time she and her family moved to the vicinity of Batesville and Oxford, Mississippi.
On October 24, 1972, McLarty sought employment with the appellee, Emerson Electric Company. In response to questions on her employment application form, McLarty indicated that her only serious illness or injury in the ten years preceding had been a complete hysterectomy performed May 18, 1971. Despite the fact that it had occurred only two years earlier, McLarty failed to mention her back injury of 1969 and the resultant 1970 disc surgery.
Emerson hired McLarty and her employment progressed without relevant incident for approximately five years until December 8, 1977. On that date, McLarty sustained an injury to her back while working on an Emerson assembly line. Approximately two weeks later, surgery was performed and another disc removed from McLarty's back. Emerson Electric accepted responsibility for McLarty's injury and paid all medical benefits and temporary total benefits accruing to her from January 8, 1977, through March 1, 1978.
McLarty received a medical release and returned to work at Emerson on March 1, 1978. She continued to work through April 5, 1978.
On April 6, 1978, McLarty was involved in an automobile accident, during which she sustained injuries to her shoulder and neck. She was unable to return to work until July 5, 1978.
Although her back continued to cause her pain, McLarty returned to work for Emerson on July 5, 1978. She continued to work until July 20, 1978, when the pain increased to the point that she was forced to leave the job.
McLarty filed a motion to controvert on July 21, 1978, seeking temporary and permanent compensation payments. Emerson answered, admitting the injury but contesting permanent benefits. Subsequently, Emerson amended its answer to include the defense of fraud in the procurement of employment.
The order of the administrative judge was entered on January 26, 1982. Relying on § 71-3-7 Miss. Code Ann. (1972), the administrative judge denied Emerson's defense of fraud, stating that it was not one of the two statutory defenses to workers' compensation claims. The administrative judge also held that Emerson Electric had not sustained its burden of showing fraud by clear and convincing evidence. In his order, the administrative judge awarded Bessie Mae McLarty apportioned benefits amounting to 450 weeks of compensation at the rate of $25.00 per week (the minimum) for permanent partial disability benefits.
The decision of the administrative judge was appealed to the full Workers' Compensation Commission. After hearing testimony and argument, the Commission affirmed the order of the administrative judge on August 17, 1982. On the issue of fraudulent procurement of employment, the majority made two findings: (1) that no such defense existed in Mississippi jurisprudence; and, (2) even if such a defense did exist, Emerson Electric had not sustained its burden of proof.

II.

Did the lower court err in failing to recognize and apply the defense of estoppel by fraud or misrepresentation in the procurement of employment and, due to that failure, allow Workers' Compensation benefits?
Application of the estoppel doctrine in a Workers' Compensation case is explained at IC Larson, Workmen's Compensation Law (M.B.) § 47.53 (Feb. 1980).

*230 The following factors must be present before a false statement in an employment application will bar benefits:
(1) The employee must have knowingly and willingly made a false representation as to his physical condition.
(2) The employer must have relied upon the false representation, and this reliance must have been a substantial factor in the hiring.
(3) There must have been a causal connection between the false representation and the injury.
Reference is made to two previous cases wherein this Court was called upon to decide whether an employee with a preexisting disability, who procured employment without informing the potential employer of that infirmity, would later be estopped to make claim under Mississippi's Workers' Compensation Plan. See, I.B.S. Mfg. Co. v. Dependents of Cook, 241 Miss. 256, 130 So.2d 557 (1961); L.B. Priester and Son v. McGee, 234 Miss. 471, 106 So.2d 394 (1958). In neither of those cases was it necessary that this Court deny benefits as awarded.
In Cook, a woman suffered a heart attack and died due to conditions of her employment which aggravated pre-existing heart disease. In her application for employment, she had stated that she had never experienced heart trouble. This Court first noted that a party charging fraud must prove it by clear and convincing evidence; it then found that there was a lack of proof that the woman knew she had heart trouble at the time she filed her application. The judgment of the lower court was affirmed.
In McGee, it was also found that the evidence was insufficient to establish that the employee concealed or misrepresented the state of his physical condition. As in Cook, the employee failed to tell the employer at the time of his employment that he had suffered a heart attack four years earlier; however, the employer had not inquired about the employee's previous or present state of health nor had a physical examination been required. Workers' Compensation benefits were allowed and upheld after the employee suffered a heart attack on the job.
In the case sub judice there also appears to be a lack of evidence sufficient to bar recovery by McLarty. Here the employer/carrier has failed to prove that there was any causal connection between McLarty's alleged false representation and the injury which she suffered on December 8, 1977.
In the order of the majority members of the commission, the following was noted:
[B]efore a false representation will bar a worker from recovery of benefits in those jurisdictions recognizing the defense, defendant must establish that the injury on which the claim is based is causally related to the employee's injury or condition which was wrongfully concealed. The existence of a causal connection is a conclusion clearly within the medical realm; therefore, defendant's burden of proof requires expert medical evidence. The only physicians testifying in this cause were Dr. DeSaussure and Dr. Justis. Neither indicated that claimant's 1969 injury made claimant a more likely candidate for a back injury than a worker who had not had such an injury. Nor did they testify claimant's 1977 injury was in any way related to her 1969 injury. Since there is no medical evidence touching on causal relationship between the 1969 injury and the current injury, the majority members of the Commission find that defendant failed to establish this element of the defense.
(emphasis added) An important distinction which should be noted here is that the second injury was not proved to be causally related to the first injury; rather, a portion of the resultant, overall disability was partially attributable to the first injury. The lower court so held and invoked the apportionment statute.
It is well established that the provisions of Mississippi's Workers' Compensation Statute are to be construed liberally in favor of the claimant and in favor of paying benefits for a compensable injury. *231 Olen Burrage Trucking Co. v. Chandler, 475 So.2d 437 (Miss. 1985); South Central Bell Telephone Co. v. Aden, 474 So.2d 584 (Miss. 1985); Barham v. Klumb Forest Products Center, Inc., 453 So.2d 1300 (Miss. 1984); Big "2" Engine Rebuilders v. Freeman, 379 So.2d 888 (Miss. 1980); Evans v. Continental Grain Co., 372 So.2d 265 (Miss. 1979). It is equally well established that an order of the Commission will not be reversed if supported by substantial evidence. Olen Burrage Trucking Co. v. Chandler, 475 So.2d 437 (Miss. 1985); Strickland v. M.H. McMath Gin, Inc., 457 So.2d 925 (Miss. 1984); Myles v. Rockwell International, 445 So.2d 528 (Miss. 1983); Shippers Express v. Chapman, 364 So.2d 1097 (Miss. 1978).
As there was absolutely no evidence which tended to show the causal relationship of the injury which occurred in 1969 to the injury which occurred in 1977, this Court is of the opinion that Emerson Electric failed to bear its burden of proof on its defense, and the Commission was correct in its determination of this point.

III.

Did the lower court err in upholding the award of the Mississippi Workmen's Compensation Commission for additional temporary total, medical and permanent partial disability benefits from and after March 1, 1978?
The gist of Emerson's argument on this point centers upon whether McLarty's debilitation  at least that which continued after March 1, 1978  was caused by the December 8, 1977, work-related injury. Emerson adverts to the fact that on March 1, 1978, McLarty was released by her physician to return to work and, in fact did so. The implication that Emerson makes is that any continuing back problem experienced by McLarty was caused, not by the 1977 work-related mishap, but by the injury to her shoulder and neck sustained in the automobile accident of April, 1978.
Despite Emerson's assertions to the contrary, both doctors who testified did indicate that the 1977 accident was causative of McLarty's condition. In mitigation of those statements, one doctor did testify to the possibility that the subsequent accident might have been the reason for her later inability to work; however, this testimony was elicited only as a response to a hypothetical question.
This assignment is controlled by the rationale employed in the first assignment; to-wit:
(1) That compensation statutes should be given a liberal construction and doubtful cases resolved in favor of compensation; Evans, 372 So.2d at 269; and,
(2) An order of the Workers' Compensation Commission will be affirmed if it is supported by substantial evidence. Olen Burrage Trucking Co., 475 So.2d at 439.

IV.
We note  with absolutely no comment  that Mississippi's Workers' Compensation Act enumerates only two circumstances in which otherwise compensable injury will not be paid and they are best stated in Subsection D, paragraph 2 of Miss. Code Ann. § 71-3-7 (1972) as follows:
No compensation shall be payable if the intoxication of the employee was the proximate cause of the injury, or if it was the willful intention of the employee to injure or kill himself or another.
The reference to a preexisting injury in paragraph 2 of the same section (71-3-7) which provides verbatim:
Where a preexisting physical handicap, disease, or lesion is shown by medical findings to be a material contributing factor in the results following injury, the compensation which, but for this paragraph, would be payable shall be reduced by that proportion which such preexisting physical handicap, disease, or lesion contributed to the production of the results following the injury.
We therefore reiterate that which was said in I.B.S. Mfg. Co. v. Dependents of Cook, 241 Miss. 256, 130 So.2d 557 (1961):
We express no opinion here as to what effect a finding by the Commission of *232 actual fraud in the procurement of employment, based upon clear and convincing evidence, would have on the rights of an employee to recover disability compensation under the Mississippi [Workers'] Compensation Law.
241 Miss. at 269, 130 So.2d at 562.
Certainly, in the absence of proven willful misrepresentation, our statute provides no remedy other than apportionment.
AFFIRMED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, PRATHER, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.