# IN THE COURT OF APPEALS
## OF THE
## STATE OF MISSISSIPPI
### NO. 1998-WC-01338-COA

**ARTHUR SHARPE**                                                    **APPELLANT**

**v.**

**CHOCTAW ELECTRONICS ENTERPRISES AND MISSISSIPPI
MANUFACTURERS ASSOCIATION WC GROUP**           **APPELLEES**

| | |
|---|---|
| DATE OF JUDGMENT: | 08/11/1998 |
| TRIAL JUDGE: | HON. V. R. COTTEN |
| COURT FROM WHICH APPEALED: | NESHOBA COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JOHN GRIFFIN JONES |
| | KENNETH ALLEN MILLER |
| ATTORNEYS FOR APPELLEES: | KEITH R. RAULSTON |
| | CHRISTY CROCKETT MCCLUSKEY |
| NATURE OF THE CASE: | CIVIL - WORKERS' COMPENSATION |
| TRIAL COURT DISPOSITION: | AFFIRMED THE WORKERS' COMPENSATION COMMISSION'S RULING DENYING CLAIMANT'S CLAIM OF A WORK RELATED INJURY |
| DISPOSITION: | AFFIRMED - 12/07/99 |
| MOTION FOR REHEARING FILED: | |
| CERTIORARI FILED: | ; granted 6/1/2000 |
| MANDATE ISSUED: | |

BEFORE McMILLIN, C.J., MOORE, AND THOMAS, JJ.

THOMAS, J., FOR THE COURT:

¶1. This is a workers' compensation case. Arthur Sharpe appeals the decision of the Neshoba County Circuit Court affirming the Mississippi Workers' Compensation Commission's denial of permanent total disability benefits as the result of a work connected lung disease. On appeal, Sharpe raises the following assignments of error:

**I. WHETHER THE FINDINGS OF FACT AND CONCLUSIONS OF LAW OF THE FULL COMMISSION AFFIRMED BY THE CIRCUIT COURT ARE SUPPORTED BY SUBSTANTIAL EVIDENCE AND NOT AGAINST THE OVERWHELMING WEIGHT OF**

**THE EVIDENCE SUFFICIENT TO PRECLUDE REVERSAL UNDER THE APPROPRIATE STANDARD OF REVIEW TO BE EMPLOYED BY THIS COURT AND OTHER REVIEWING COURTS.**

**II. WHETHER THE CIRCUIT COURT ERRED IN ITS AFFIRMANCE OF THE FULL COMMISSION'S REVERSAL OF THE ORDER OF THE ADMINISTRATIVE JUDGE BASED UPON THE FINDING THAT THE CLAIMANT HAD NOT MET HIS BURDEN OF PROOF IN ESTABLISHING CAUSAL CONNECTION BETWEEN HIS EMPLOYMENT AND THE DISABLING LUNG CONDITION FOR WHICH HIS CLAIM WAS MADE.**

¶2. Finding no error, we affirm.

**FACTS**

¶3. The claimant, Arthur Sharpe, has been principally a career military serviceman. He is a high school graduate with some college education. He has the benefit of extensive military training received during the course of his active duty army, national guard and reserve career, some thirty-seven years all totaled. Prior to and upon returning from a service tour in Korea, he was employed by F.W. Woolworth where he eventually attained the status of store manager. He continued to work as a manager in varying capacities for different employers prior to returning to full-time military service as a civilian administration and supply technician in the Mississippi National Guard. Following completion of his military career, Sharpe began employment with Choctaw Electronics as the personnel supervisor in October of 1988.

¶4. Sharpe maintains that when he began his employment at Choctaw he was in excellent health, having recently passed a yearly physical examination at the Mississippi National Guard. He also maintains that as part of the physical examination, he was required to complete a four mile run, which he did in thirty-eight minutes. He further testified that for the next four years following his last physical he continued to run two to three times per week. By all accounts, Sharpe does not appear to have ever experienced any lung or respiratory problems prior to his employment with Choctaw, nor is there any account of chemical irritant exposure which might lead to the problems he now complains of prior to beginning employment with Choctaw in 1988. Sharpe's duties at Choctaw, at least until 1992, were limited to that of personnel supervisor. Sometime during 1992, Sharpe's personnel duties grew to include the responsibilities of safety supervisor as well. It was also during this time or just prior to it that Sharpe began to experience shortness of breath and decreased stamina during physical exertion.

¶5. Sharpe testified as to the steps and materials needed to produce the speaker systems at Choctaw. He explained that many different chemicals, thinners and solvents in varying amounts were needed during the manufacturing process. In addition to their use in the manufacturing process, the chemicals were also used on occasion to clean the production floors. Sharpe testified that he spent in excess of three-quarters of his daily time at the plant on the production line supervising the employees. He further testified that he was present and often assisted in the floor clean-ups. As safety supervisor, Sharpe also testified that he was present during the disposal of the waste chemicals. Sharpe testified that the disposal method used at Choctaw consisted of open drum burning behind that plant, and that as safety supervisor he was always present during the burns. Upgrades to the ventilation system and alternative methods of disposal were

implemented following an onsite OSHA inspection. Of the several chemicals used, one in particular, III Trichloroethane, was used frequently and disposed of via an open drum burning method. He testified that the burning of III Trichlorothane caused him to experience headaches and that excessive exposure would often result in coughing and flu-like symptoms. The vast majority of the chemicals used at the plant are known to cause pulmonary distress, irritation or allergic reactions when ingested in sufficient quantities. Sharpe's claim is founded on the assertion that his exposure to these chemicals during their use and disposal at Choctaw resulted in an exacerbation or aggravation of an existing pulmonary ailment.

¶6. Sharpe filed his petition to controvert on December 4, 1995. Following a hearing before an administrative law judge, Sharpe was awarded permanent total disability benefits in the amount of $252.59 per week commencing January 17, 1995, for a period of 450 weeks as a result of work connected lung disease. Choctaw thereafter filed a petition for review by the Full Commission on June 23, 1997, for review of the previously entered order awarding benefits. The Full Commission reversed the administrative law judge's decision awarding benefits. The Full Commission based its decision to deny benefits upon its finding that there was insufficient evidence establishing a legitimate connection between Sharpe's employment with Choctaw and his lung disease. The Full Commission's decision was summarily affirmed by the circuit court on August 14, 1998, following an appeal by Sharpe.

## ANALYSIS

### I.

**WHETHER THE FINDINGS OF FACT AND CONCLUSIONS OF LAW OF THE FULL COMMISSION AFFIRMED BY THE CIRCUIT COURT ARE SUPPORTED BY SUBSTANTIAL EVIDENCE AND NOT AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE SUFFICIENT TO PRECLUDE REVERSAL UNDER THE APPROPRIATE STANDARD OF REVIEW TO BE EMPLOYED BY THIS COURT AND OTHER REVIEWING COURTS.**

### II.

**WHETHER THE CIRCUIT COURT ERRED IN ITS AFFIRMANCE OF THE FULL COMMISSION'S REVERSAL OF THE ORDER OF THE ADMINISTRATIVE JUDGE BASED UPON THE FINDING THAT THE CLAIMANT HAD NOT MET HIS BURDEN OF PROOF IN ESTABLISHING CAUSAL CONNECTION BETWEEN HIS EMPLOYMENT AND THE DISABLING LUNG CONDITION FOR WHICH HIS CLAIM WAS MADE.**

¶7. Sharpe appeals the decision of the Full Commission, as affirmed by the Neshoba County Circuit Court, denying his claim for compensation under the Mississippi Workers' Compensation law. Sharpe raises two assignments of error in his appeal to this Court. Each assignment need not be addressed separately as they both can be resolved upon review of the Full Commission's findings of fact and conclusions of law. Sharpe challenges the findings of fact and conclusions of law reached in the Full Commission's decision to reverse the administrative law judge and deny his claim for benefits. Sharpe's assignment specifically questions the Full Commission's finding that the evidence submitted was insufficient to establish a legitimate connection

between his acknowledged lung ailment and his employment with Choctaw Electronics. The pivotal question on which the fate of Sharpe's claim rests, however, is whether during his employment at Choctaw he was exposed to chemical irritants which in fact either caused, contributed to, aggravated or accelerated the lung ailments he now suffers. In essence, the Full Commission ruled that Sharpe had failed to meet his burden of proof in establishing a casual connection between his exposure to the chemicals in question while employed at Choctaw Electronics and the condition or illness for which his claim is made.

¶8. In reaching our decision we first turn to our well settled standard of review in workers' compensation cases which mandates our limited scope when reviewing factual issues on appeal from the Commission. We are bound by the following:

> Under settled precedent, courts may not hear evidence in compensation cases. Rather, their scope of review is limited to a determination of whether or not the decision of the commission is supported by the substantial evidence. If so, the decision of the commission should be upheld. The circuit courts act as intermediate courts of appeal. The Supreme Court, as the circuit courts, acts as a court of review and is prohibited from hearing evidence or otherwise evaluating evidence and determining facts; . . . "[W]hile appeals to the Supreme Court are technically from the decision of the Circuit Court, the decision of the commission is that which is actually under review for all practical purposes."

> As stated, the substantial evidence rule serves as the basis for appellate review of the commission's order. Indeed, the substantial evidence rule in workers' compensation cases is well established in our law. Substantial evidence, though not easily defined, means something more than a "mere scintilla" of evidence, and that it does not rise to the level of "a preponderance of the evidence." It may be said that it "means such relevant evidence as reasonable minds might accept as adequate to support a conclusion. Substantial evidence means evidence which is substantial, that is, affording a substantial basis of fact from which the fact in issue can be reasonably inferred."

*Delta CMI v. Speck*, 586 So. 2d 768, 772-73 (Miss. 1991) (citations omitted).

¶9. The Commission sits as the "ultimate finder of facts" in deciding compensation cases; therefore, "its findings are subject to normal, deferential standards upon review." *Natchez Equipment Co., Inc. v. Gibbs*, 623 So. 2d 270, 273 (Miss. 1993). Matters of law are reviewed under the *de novo* standard of review. *Spann v. Wal-Mart Stores, Inc.*, 700 So. 2d 308 (¶12) (Miss. 1997). We will only reverse the Commission's rulings where issues of fact are unsupported by substantial evidence and matters of law are clearly erroneous. *Hedge v. Leggett & Platt, Inc.*, 641 So. 2d 9, 12 (Miss. 1994).

¶10. We begin our analysis by noting two undisputed points. First, we note that Sharpe clearly has demonstrated the presence of a lung ailment through medical testimony and that his affliction, at least to some degree, has limited his physical capabilities. Secondly, we note that chemicals in question, when ingested or inhaled in sufficient concentrations, can cause pulmonary distress, irritation or allergic reactions. However, the mere fact that Sharpe suffers from a lung ailment coupled with the additional fact that he was, in some manner, exposed to these chemicals does not satisfy his required burden of proof demonstrating a casual connection between the two before an award of benefits is justified under Mississippi workers' compensation law. *See Mississippi Stationary Co. v. Segal*, 214 So. 2d 820, 822 (Miss. 1968) (holding that claimant's injury must be caused "in some reasonable substantial degree by the employment"). Ascertaining what is "reasonably substantial" remains a matter of interpretation of the medical evidence and rests primarily upon medical estimation. Dunn, Mississippi Workman's Compensation § 167 (3d ed. 1990)

. The case *sub judice* involves medical evidence from no less than four highly qualified medical experts who, despite their varying opinions as to the nature and severity of Sharpe's lung ailment, could not specifically point to an exact etiology of Sharpe's condition.

¶11. Dr. William C. Pinkston, a board-certified pulmonologist, examined Sharpe on December 4, 1996, at the request of Choctaw. Certain medical records relating to Sharpe were also provided to Dr. Pinkston. Sharpe's primary complaint at the time of this examination was shortness of breath. Dr. Pinkston's physical examination revealed nothing abnormal; however, the pulmonary function studies also conducted by Dr. Pinkston showed significantly obstructed airways. Evidence of some mild interstitial fibrosis or scarring of the lungs was also revealed from x-rays taken at the same time. When asked to render an opinion on the results of his examination, Dr. Pinkston opined that certain portions of the tests should be discounted due to insufficient patient effort and that the existence of interstitial fibrosis was of no major significance. Essentially Dr. Pinkston opined that Sharpe had a normal set of lungs and that the complained exposure to the chemicals at Choctaw was insufficient to cause the ailment asserted by Sharpe. Dr. Pinkston agreed that some of the chemicals which Sharpe was exposed to could cause lung problems, but maintained his opinion that Sharpe's lungs appeared to be functioning normally, thereby removing any diagnosis of lung disease whether work related or not. Dr. Pinkston concluded that he could not find any evidence of impairment or abnormal lung function to even suggest the presence of lung disease despite his acknowledgment that Sharpe does in fact have shortness of breath. In concluding his opinion as to the precise cause of Sharpe's ailment, Dr. Pinkston elected to refrain from specifically pointing to an exact etiology until further testing was conducted. We note that Dr. Pinkston's requests for additional testing by a qualified ear, nose, and throat specialist in conjunction with a cardiopulmonary testing regime were denied by the administrative law judge in lieu of appointing an independent medical specialist due to a lack of consensus among the experts.

¶12. Dr. Brian Forrester, a specialist in occupational medicine at the University of Alabama at Birmingham, Division of Occupational Medicine, conducted an evaluation of Sharpe on February 27, 1997. Prior to the actual examination, a detailed medical history was taken in addition to a comprehensive review of the records compiled by both Dr. Pinkston and Dr. Frederick T. Duggan, Sharpe's primary treating physician. Material on the particular chemicals at issue was also provided to aid Dr. Forrester in his evaluation. No additional pulmonary function studies or other diagnostic testing was performed by Dr. Forrester. Dr. Forrester concluded, based on the records provided him and on his evaluation, that Sharpe suffers from a form of adult on-set asthma, but the exact cause of which he could not opine. He concluded that Sharpe's condition rendered him susceptible to lung irritation when exposed to any number of different chemicals or irritants, whether at work or home. In regard to the working conditions at Choctaw, specifically the chemical exposure, Dr. Forrester concluded that, at worst, Sharpe's lung condition was only temporarily aggravated and that the chemical exposure was no longer operating as a factor in his present condition. Dr. Forrester did, however, caution Sharpe against returning to any work environment where chemical irritants were present.

¶13. Dr. Arthur Hume, Ph.D. in pharmacology and toxicology also reviewed the medical and data compiled concerning Sharpe's exposure to the chemicals. Dr. Hume is a professor in the Department of Pharmacology and Toxicology at the University of Mississippi Medical Center and is director of that university's Poison Control Services. He is not a medical doctor but was accepted as an expert in the above mentioned fields. Dr. Hume opined that Sharpe's exposure to the chemicals at Choctaw was not sufficiently intense to cause or contribute to the lung ailment of which he complains. Dr. Hume's conclusions were based on his review of the deposition testimony of Dr. Duggan and Sharpe, together with OSHA inspection

documents and material safety data sheets regarding the chemicals used at Choctaw. While Dr. Hume conceded that certain chemicals used at Choctaw could, in sufficient quantities, result in pulmonary irritation, distress and shortness of breath, he maintained his conclusion that Sharpe's exposure was nevertheless insufficient to produce the problems affecting him. Of significance to Dr. Hume in reaching his conclusions were the facts that no other employees at Choctaw experienced similar problems and that Sharpe spent approximately one-fifth of his work day in his office which had a separate ventilation system. Dr. Hume also stated that even if Sharpe were found to have some allergic reaction to these chemicals, his removal from the exposure would reverse any adverse reactions and improve his symptoms. Dr. Hume elected to defer to Dr. Duggan's findings and opinions on medical causation.

¶14. Dr. Frederick Duggan, a specialist in internal medicine and pulmonary distress, treated Sharpe initially in 1992 following Sharpe's complaints of shortness of breath. Dr. Duggan can most readily be identified as Sharpe's primary treating physician. Dr. Duggan first performed pulmonary function studies on Sharpe in the summer of 1992. Those studies indicated partial reversible airways disease; however, repeat studies conducted in December of 1992 indicated normal lungs. Additional pulmonary function studies were again conducted in January of 1995 after a fainting episode at Choctaw. The January 1995 studies indicated ventilatory impairment and decrease respiratory muscle strength. Based on these results, Dr. Duggan referred Sharpe to other physicians for a series of tests involving Sharpe's cardiac and neurological systems in an effort to narrow the causes for Sharpe's pulmonary dysfunction. All tests produced negative results with the exception of a positive tilt test which could explain the fainting episode.

¶15. Following a period of medical leave and removal of Sharpe from Choctaw, another pulmonary functions study was conducted in the summer of 1995. Sharpe showed improvement in his lung capabilities. The results of these studies when compared to the previous studies led Dr. Duggan to conclude that the work environment at Choctaw "may be related" to Sharpe's lung disease, but that the exact etiology of his condition remains unknown. On further questioning, Dr. Duggan conceded that Sharpe's improvement could just have easily resulted from the medical treatments he was undergoing as the removal from exposure at Choctaw during this same period. It is further noteworthy that Sharpe's lung function reversed and began to deteriorate between September 1995 and November 1996 despite Sharpe's absence from Choctaw during this period. Dr. Duggan conceded that Sharpe's condition in late 1996 could be just as easily related to the exposure at Choctaw as it could not. Finally, Dr. Duggan opined that for the short term the workplace did exacerbate his lung condition, but that whether this exposure resulted in any long term injury is unknown, but remains a "possibility."

¶16. We review workers' compensation claims and their essential components as stated in *Penrod Drilling Co. v. Etheridge*, 487 So. 2d 1330, 1332 (Miss. 1986):

> 1. The claimant generally bears the burden of proof to show an injury arising out of employment, and a causal connection between the injury and the claimed disability;
>
> 2. The Commission is the trier of facts, judges the credibility of witnesses, and facts supported by substantial evidence should be affirmed by the circuit court;
>
> 3. Unless prejudicial error is found, or the verdict is against the overwhelming weight of the evidence, the Commission's order should be affirmed.

(citing *Strickland v. M.H. McMath Gin, Inc.*, 457 So. 2d 925, 928 (Miss. 1984)).

¶17. Having conducted a detailed review of the medical evidence and the conclusions reached by the Full Commission, we have concluded that substantial evidence existed to justify the Commission's denial of Sharpe's claim for benefits. We likewise conclude that the Commission's decision was without any clearly erroneous applications of law. The Commission's dissatisfaction with the claimant's burden of proof in establishing the necessary connection between his condition and his employment is justifiable in light of the overall medical evidence. The Commission best characterizes the connection between his employment and his condition as "strictly temporal or coincidental [in] nature." The only evidence of a probable connection between his employment and his condition is found in the testimony of Dr. Duggan, but his opinion is limited to a "possibility" rather than a more conclusive estimation. We note, as did the Commission, that despite the inability of the four medical experts to opine an exact etiology for Sharpe's condition, Drs. Hume, Forrester and Pinkston were all of the similar opinion that exposure to the chemicals neither caused nor contributed to his condition. Therefore, in regard to Dr. Duggan's opinion, such an opinion, without more, is inadequate in light of the medical evidence as a whole to serve as the sole basis for an award of benefits. Speculation, surmise, conjecture and the like have no place in the Commission's decisions, and not even a liberal interpretation of the law and evidence will permit the Commission to forge an otherwise questionable claim into some compensable shape or form. *See generally Toldson v. Anderson-Tully Co.*, 724 So. 2d 399 (¶11-12) (Miss. Ct. App. 1998); DUNN, MISSISSIPPI WORKMAN'S COMPENSATION § § 260-282 (3d ed. 1982 & Supp. 1988). This assignment of error is without merit.

**¶18. THE JUDGMENT OF THE NESHOBA COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**McMILLIN, C.J., SOUTHWICK, P.J., BRIDGES, IRVING, AND MOORE, JJ., CONCUR. PAYNE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING, P.J., DIAZ AND LEE, JJ.**

PAYNE, J., DISSENTING:

¶19. The majority rests its decision on the nonexistence of a causal link between Sharpe's physical condition and his work environment. However, in reviewing the facts as they appear in the briefs I disagree with the majority's conclusion that Sharpe is not entitled to benefits due to the absence of such a causal link between his injury and the working conditions.

¶20. The majority argues the testimony of the experts was inconclusive as to causally link Sharpe's respiratory injuries to the working conditions at Choctaw. However, in reviewing the established standards for determining such causal relation, I find to the contrary.

¶21. "The work connection test arises from Miss. Code Ann. § 71-3-7 (1972). The worker's employment, however, need not have been the sole source of the injury. The claim is compensable if the injury or death is in part work connected. Injury or death arises out of and in the course of employment even when the employment merely aggravates, accelerates or contributes to the injury." *Chapman v. Hanson Scale Co.*, 495 So. 2d 1357, 1360 (Miss. 1986) (*See* Dunn, Mississippi Workers' Compensation § 164 (3d ed.1982) ) (citations omitted).

¶22. "It is well settled that where a claimant's employment contributes to his condition, the injury is compensable." *Hedge v. Leggett & Platt, Inc*., 641 So. 2d 9, 14 (Miss. 1994) (citing *Jenkins v. Ogletree Farm Supply*, 291 So. 2d 560, 563 (Miss. 1974)).

¶23. Sharpe was a career military serviceman, and a physical examination just prior to his beginning employment with Choctaw in 1988 showed he was in excellent cardiovascular health, never having experienced any lung or respiratory problems prior to such employment with Choctaw. We are now led to investigate what caused Sharpe's decline in health starting in 1992 when his job duties changed to require him to spend the majority of his workday in the manufacturing plant and to supervise daily waste disposal of toxic chemicals.

¶24. As does the majority, I evaluate the opinion of each of the four experts involved in this case. Dr. Duggan is Sharpe's chief treating physician. Dr. Duggan first examined Sharpe in 1992 at Sharpe's complaints of shortness of breath, and at that time, Dr. Duggan diagnosed Sharpe with a reversal airways disease. In 1995, Dr. Duggan further found Sharpe was afflicted with an obstructive ventilatory impairment and that Sharpe had experienced a decrease in respiratory muscle strength. Further testing led Dr. Duggan to conclude Sharpe's work environment contributed to his condition. Upon Sharpe's medical leave from work in 1995, his condition improved. After this improvement, Sharpe experienced a set back, and the majority contends this proves his exposure at Choctaw could not have contributed to his respiratory problems. However, Dr. Duggan explains the impairment was a progressive condition that became permanent, causing Sharpe's ultimate physical state.

¶25. While he evaded attributing Sharpe's workplace environment to his physical condition, Dr. Pinkston, the doctor summoned by the employer/carrier, could not find any other reason for Sharpe's debilitating health. In his tests, Dr. Pinkston failed to locate any cause for Sharpe's shortness of breath, but in his deposition Dr. Pinkston stated just because he could not find any problem did not mean no problem existed.

¶26. Dr. Hume, a Ph. D. pharmacology and toxicology expert, detected no reason for Sharpe's ailment, yet concluded the chemicals with which Sharpe was in contact were known to cause lung problems. Dr. Hume also deferred to Dr. Duggan's opinions on medical causation and agreed that all the chemicals used at Choctaw could cause the types of symptoms and ailments Sharpe was experiencing. Dr. Hume further advised Sharpe to avoid any further exposure to such chemicals.

¶27. Dr. Brian Forrester, an occupational medicine specialist, reviewed Dr. Duggan's and Dr. Pinkston's records, not conducting any tests of his own. Though Dr. Forrester did not say Sharpe's physical problems were caused by his work, he did say the workplace aggravated or exacerbated Sharpe's condition. Dr. Forrester concurred with Dr. Duggan that Sharpe suffered from small airways disease and ordered Sharpe to refrain from working around chemicals such as were used at Choctaw.

¶28. Reviewing the statements of each expert, it seems all agree the chemicals used at Choctaw can contribute to pulmonary disease, yet no one wants to attribute Sharpe's pulmonary disease to the chemicals. The majority wants to pass off these connected events as "coincidental in nature." I do not see it that way.

¶29. Sharpe testified he always felt sick at work but felt fine on weekends. After a leave the first part of 1995, Sharpe got better but worsened just after he returned to work in mid-1995. If not from some source inside the workplace, how can an otherwise healthy man go to work in 1988, in 1992 change job positions

and get sick, then quit that job in a few years and get better only to return to work and get sick again? This is a question none of the experts answered.

¶30. While refraining from attributing Sharpe's health problems to the chemicals, these experts all advised him to avoid further exposure to the chemicals. The question arises, why would they recommend refraining from contact with these chemicals lest they feared such contact would harm Sharpe?

> We recognize the principle that, under the Mississippi Workmen's Compensation Act, a claimant must establish by competent evidence his injury arose out of and in the course of his employment, and that causal connection must be shown between the employment and the injury. However, it is only necessary to prove that the injury resulted from activity which is (1) in its overall contours actuated at least in part by a duty to serve the employer, or (2) reasonably incidental to the employment.

*Stepney v. Ingalls Shipbuilding Div., Litton Sys., Inc.*, 416 So. 2d 963, 967 (Miss. 1982) (citing *Big "2" Engine Rebuilders v. Freeman*, 379 So. 2d 888 (Miss. 1980)). The evidence before us shows Sharpe's injuries arose in the course of his employment at Choctaw, and there was a causal link between the contact with harmful chemicals and Sharpe's respiratory problems.

¶31. "It is well established that the provisions of Mississippi's Workers' Compensation Statute are to be construed liberally in favor of the claimant and in favor of paying benefits for a compensable injury." *Emerson Elec. Co. v. McLarty*, 487 So. 2d 228, 230 (Miss. 1986) (citations omitted). "Doubtful cases should be resolved in favor of compensation, so as to fulfill the beneficial purposes of the statute." *Miller Transporters, Inc. v. Guthrie*, 554 So. 2d 917, 918 (Miss. 1989).

¶32. A vast amount of evidence points to a causal connection between Sharpe's physical condition and his work environment at Choctaw. For the foregoing reasons, I disagree with the majority because the findings of the Commission were not based on substantial evidence, but on a refusal to conclude what the evidence reasonably implies. I would reverse and remand to the Commission for awarding of compensation to Sharpe.

**KING, P.J., DIAZ, AND LEE, JJ., JOIN THIS SEPARATE WRITTEN OPINION.**