Oliver **ROBINETT**, Appellant,

v.

**ENSERCH ALASKA CONSTRUCTION
and Employers' Casualty Co.,
Appellees.**

No. S–3438.

Supreme Court of Alaska.

Dec. 21, 1990.

Michael J. Jensen, Chancy Croft Law Office, Anchorage, for appellant.

Shelby L. Nuenke–Davison, Anchorage, for appellees.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

RABINOWITZ, Justice.

### I. INTRODUCTION.

Oliver Robinett appeals the decision of the Alaska Workers' Compensation Board ("Board"), affirmed by the superior court, denying his claim for a back injury allegedly suffered in October 1986 while working for Enserch Alaska Construction ("Enserch"). We reverse and remand for proceedings consistent with this opinion.

### II. FACTS AND PROCEEDINGS.

The relevant facts are not in controversy. Oliver Robinett has a long history of work related back injuries resulting from accidents in the heavy construction industry. Robinett first injured his back while working as a heavy equipment operator in Arizona in 1973, "and was hospitalized due to total inability to work."[1] A myelogram

---

**1.** Quoted text, unless otherwise noted, is taken from the Board's Decision and Order dated Sep- tember 4, 1987.

and an electro-myography preceded major back surgery; Robinett was then restricted to light work. Robinett, however, did not work for the next four years; he endured a second back surgery (again preceded by a myelogram) and received workers' compensation benefits during that time.

In 1977, Robinett returned to work. He was hit by a falling log in Idaho in June 1979 and was hospitalized with broken ribs and a bruised kidney. Robinett returned to logging work in August 1979, but reinjured his back in a fall in July 1980. Robinett thereafter suffered increasing back and related leg pain, ceased working, received treatment, therapy, and x-rays, and finally underwent a third back surgery in July 1981.

In September 1982, Robinett was released for light to medium work with a rating of 20–25% permanent back disability. He settled his claim for the 1980 injury in November 1982, and then "ran his own business from 1983 until 1985, by renting and operating his own equipment as a contractor for other loggers." In 1985, Robinett moved to Homer and engaged in "light work" as an operator and mechanic for Dietz Construction. In July 1986, Enserch hired Robinett to operate a bulldozer on the Bradley Lake Project near Homer.

"At the time of hire" by Enserch, Robinett "was asked to complete Enserch's preplacement Medical Questionnaire," designed in part to elicit information about past employment related injuries. Robinett answered six of the seven questions. He disclosed only the first of his three back surgeries, omitted mentioning any "previous hospitalizations," denied having "ever had any limitations put on [his] physical activities because of illness or injury," and did not state whether he had "ever had a disability claim for health reasons." The record discloses no follow-up inquiries by Enserch.

Robinett worked for Enserch for three months without apparent incident. On or about October 1986, however, Robinett began operating a bulldozer in a rock quarry. Robinett soon began to notice low back pain and "had to quit the dozer" after only two full days work in the quarry. Two of Robinett's co-workers testified that Robinett informed them of his injury at the time he was hurt, and that they observed him "drag[ging] his legs" and walking "funny." Robinett testified "that he told the three foremen on the job about the injury … and was never asked to fill out a notice of occupation injury."

Robinett ceased working in the quarry after the onset of pain, but continued to work for Enserch on a grader until he was laid off in late October due to a reduction in force. Robinett then left Alaska for Arizona where he was again hired by Enserch as an equipment operator. Robinett returned to Alaska, however, shortly thereafter. On December 16, 1986, he telephoned Enserch's Anchorage office to make a claim for a work-related injury.[2]

2. Alaska Statute 23.30.100 provides as follows:
   (a) Notice of an injury or death in respect to which compensation is payable under this chapter shall be given within 30 days after the date of such injury or death to the board and to the employer.
   (b) The notice shall be in writing, contain the name and address of the employee and a statement of the time, place, nature, and cause of the injury or death, and be signed by the employee or by a person on behalf of the employee, or in case of death, by a person claiming to be entitled to compensation for the death or by a person on behalf of that person.
   (c) Notice shall be given to the board by delivering it or sending it by mail addressed to the board's office, and to the employer by delivering it to the employer or by sending it by mail addressed to the employer at the employer's last known place of business. If the employer is a partnership, the notice may be given to a partner, or if a corporation, the notice may be given to an agent or officer upon whom legal notice may be served or who is in charge of the business in the place where the injury occurred.
   (d) Failing to give notice does not bar a claim under this chapter
      (1) if the employer, an agent of the employer in charge of the business in the place where the injury occurred, or the carrier had knowledge of the injury or death and the board determines that the employer or carrier has not been prejudiced by failure to give notice;

Robinett filed a claim adjustment application on February 19, 1987.

The Board denied Robinett's claim in September 1987. The Board determined that because Robinett made false statements in his preemployment questionnaire, Robinett was "not actually an employee of Enserch" for purposes of the Workers' Compensation Act. In the alternative, the Board concluded that the presumption of compensability did not apply to Robinett's claim of work related injury. It found no medical evidence of reinjury attributable to Robinett's work in Alaska and declared Robinett's own testimony "not credible."[3] The Board further discounted the testimony of Robinett's co-workers "because neither of them personally observed [Robinett] being injured. All they could attest to was what Robinett had related to them." The superior court affirmed the Board's denial of benefits solely on the ground that Robinett's alleged misrepresentations on Enserch's employment questionnaire precluded him from claiming employee benefits under the Workers' Compensation Act.

      (2) if the board excuses the failure on the ground that for some satisfactory reason notice could not be given;
      (3) unless objection to the failure is raised before the board at the first hearing of a claim for compensation in respect to the injury or death.

3. The Board found that Robinett had made "very serious false misrepresentations regarding the pre-employment questionnaire and, therefore, we cannot believe him with respect to his claimed injury."

4. This appeal requires us to interpret the Alaska Workers' Compensation Act ("Act"). As we noted in *Hood v. State,* 574 P.2d 811, 813 (Alaska 1978),

    where ... issues to be resolved turn on statutory interpretation, the knowledge and expertise of the agency is not conclusive of the intent of the legislature in passing a statute. Statutory interpretation is within the scope of the court's special competency, and it is our duty to consider the statute independently.

Whether an employee's misrepresentations on an employment questionnaire are sufficient to divest him of employee status under the Act is also a legal question subject to independent determination by this court. *Cf. Miller v. ITT Arctic Serv.,* 577 P.2d 1044, 1046 (Alaska 1978) (whether substantial evidence exists to overcome presumption that injury is work connected is a legal question subject to the court's

## III. DISCUSSION.

### A. *The Larson Test.*

    In rejecting Robinett's claim, the Board relied upon the "Larson test" for analyzing employee responses to employer questionnaires.[4] The "Larson test" provides that an employee's knowing and willful false representation of his or her physical condition may bar recovery of statutory workers' compensation.[5] The test has essentially been codified in AS 23.30.022, which provides,

An employee who knowingly makes a false statement as to the employee's physical condition on an employment application or preemployment questionnaire may not receive benefits under this chapter if

(1) the employer relied upon the false representation and this reliance was a substantial factor in the hiring; and

(2) there was a causal connection between the false representation and the injury to the employee.

independent review); *Fireman's Fund Am. Ins. Cos. v. Gomes,* 544 P.2d 1013, 1015 (Alaska 1976) (whether substantial evidence exists to overcome presumption that death is work connected is a legal question subject to the court's independent review).

5. Professor Larson states the test as follows:

    [It] has been held that employment which has been obtained by the making of false statements ... is still employment; that is, the technical illegality will not of itself destroy compensation coverage. What seems to be emerging, in place of a conceptual approach relying on purely contractual tests, is a common-sense rule made up of a melange of contract, causation, and estoppel ingredients. The following factors must be present before a false statement in an employment application will bar benefits:
    (1) The employee must have knowingly and willfully made a false representation as to [his or her] physical condition.
    (2) The employer must have relied upon the false representation and [his or her] reliance must have been a substantial factor in the hiring.
    (3) There must have been a causal connection between the false representation and the injury.
1C A. Larson, Workmen's Compensation Law § 47.53, at 8–393 & 394 (1986).

Alaska Statute 23.30.022, however, does not apply to injuries suffered prior to July 1, 1988, *see* Ch. 79, §§ 5, 48, SLA 1988, and we find no express statutory provision in the pre-July 1988 Alaska Workers' Compensation Act that precludes benefits for false misrepresentation. We therefore decline to infer that the legislature intended Robinett's intentional misrepresentation to disqualify his claim for an injury allegedly suffered in 1986.[6]

### B. *The Preliminary Link.*

■ Alaska Statute 23.30.120(1) provides, in relevant part,

In a proceeding for the enforcement of a claim for compensation under this chapter it is presumed, in the absence of substantial evidence to the contrary, that (1) the claim comes within the provision of this chapter[.]

In deciding whether to apply the presumption, the Board must determine whether the employee has established some "preliminary link" between the alleged disability and the employment. *See, e.g., Burgess Const. Co. v. Smallwood*, 623 P.2d 312, 316 (Alaska 1981) ("there must be some evidence that the claim arose out of, or in the course of, employment before the presumption arises"). We have emphasized, however, that this threshold showing is minimal, and requires only that an employee adduce "some evidence" that the claim arose out of his or her employment. *Cheeks v. Wismer & Becker/G.S. Atkinson, J.V.*, 742 P.2d 239, 244 (Alaska 1987); *see also Kessick v. Alyeska Pipeline Serv. Co.*, 617 P.2d 755, 758 (Alaska 1980) (doubts regarding questionable but uncontradicted medical testimony resolved in claimant's favor).

Our study of the record persuades us that Robinett met this threshold burden. In particular, Robinett's co-workers testi-fied, as did Robinett, to both the rugged jarring conditions in the rock quarry and their observations of Robinett's condition before and after his alleged injury.[7] *See Beauchamp v. Employers Liab. Assurance Corp.*, 477 P.2d 993, 996–97 (Alaska 1970) (uncontradicted lay testimony, coupled with inconclusive medical testimony, is sufficient to establish a preliminary link to raise the presumption of compensability); *see also Fairbanks N. Star Borough v. Rogers & Babler*, 747 P.2d 528, 533 (Alaska 1987) ("the claimant need only prove that 'but for' the subsequent trauma the claimant would not have suffered disability at this time, or in this way, or to this degree. In other words, to satisfy the 'but for' test, the claimant need only prove, as indicated above, that the aggravation, acceleration or combination was a substantial factor in the resulting disability.").

■ Once the preliminary link has been established, an injury will be presumed to be work connected in the absence of substantial evidence to the contrary. *See, e.g., Veco, Inc. v. Wolfer*, 693 P.2d 865, 869–70 & n. 6 (Alaska 1985); *Miller v. ITT Arctic Serv.*, 577 P.2d 1044, 1046 (Alaska 1978); *Beauchamp*, 477 P.2d at 997. As we noted in *Cheeks*, 742 P.2d at 244, it becomes

the employer's burden to overcome the presumption by coming forward with substantial evidence that the injury was not work related. There are two methods by which the presumption can be overcome: (1) affirmative evidence that the injury was not work-related, or (2) elimination of all reasonable possibilities that the injury was work connected.

. . . .

Once it has been determined that the presumption has been successfully rebutted, the next step in the analysis is to determine whether the employee has

---

**6.** *See, e.g., Hood*, 574 P.2d at 815 ("the workmen's compensation acts should be liberally construed in favor of the employee"). The legislature's directive that "the workers' compensation laws must not be construed by the courts in favor of any party," like AS 23.30.022, expressly applies only to injuries sustained on or after July 1, 1988. Ch. 79, §§ 1(b), 48, SLA 1988.

**7.** This court will not reweigh evidence or the credibility of witnesses. *E.g., Whaley v. Alaska Workers' Compensation Bd.*, 648 P.2d 955, 957–58 (Alaska 1982). However, we reject as without factual support the Board's conclusion that Robinett's co-workers merely restated "what Robinett had related to them."

proved all elements of his claim by a preponderance of the evidence.[8]

We therefore conclude that the Board erred in holding that Robinett's evidence failed to establish a preliminary link between his employment and his injury. We further hold that the Board and the superior court erred in applying retroactively the "Larson test" codified in AS 23.30.022. We therefore REVERSE and REMAND for proceedings consistent with this opinion.

8. The presumption of AS 23.30.120 then "places the burden on the employer to go forward with evidence on the issue of whether the injury arises outside or within the scope of employment." *Anchorage Roofing Co., Inc. v. Gonzales*, 507 P.2d 501, 504 (Alaska 1973).