SHAW'S SUPERMARKETS, INC., & another[1] *vs.* ANTHONY
DELGIACCO.

Suffolk. May 6, 1991. - August 8, 1991.

Present: LIACOS. C.J., WILKINS. ABRAMS, O'CONNOR. & GREANEY. JJ.

*Contract*, Employment, Validity. *Fraud. Workers' Compensation Act*,
Right to compensation.

An employee who misrepresented information about prior injuries in his
employment application would be ineligible, under G.L. c. 152, § 27, to
receive workers' compensation for a subsequent injury, if the employee
knowingly and wilfully made a false representation as to his physical
condition, if the employer's reliance on the false representation was a
substantial factor in the hiring, and if a causal connection existed be-
tween the false representation and the injury. [843-845]

In a proceeding by a workers' compensation insurer to recover benefits
paid to an employee, the damages, should the insurer prevail on re-
mand, were to consist of the compensation paid plus interest; in the
circumstances, imposition of costs and attorneys' fees under G. L.
c. 152, § 14, was not warranted. [845-846]


CIVIL ACTION commenced in the Superior Court Depart-
ment on August 22, 1988.

The case was heard by *Elizabeth B. Donovan*, J.

The Supreme Judicial Court on its own initiative trans-
ferred the case from the Appeals Court.

*Gregory F. Galvin* (*Robert N. Gross* with him) for the
defendant.

*Patrick T. Jones* for Shaw's Supermarkets, Inc.

*Paul F. Beckwith*, for Liberty Mutual Insurance Com-
pany, was present but did not argue.

ABRAMS, J. At issue is whether an employee who misrepre-
sented information about prior injuries in his employment

---

[1]Liberty Mutual Insurance Company.

application is entitled to workers' compensation under G. L. c. 152 (1990 ed.) for a subsequent injury. We hold that he may not receive compensation if the employer substantially relied on the knowing misrepresentation in hiring the employee and if there is a causal connection between the misrepresentation and the injury.

After a bench trial, the Superior Court judge found the following facts. On March 31, 1988, Anthony Delgiacco, the defendant, applied for a position as a warehouseman with Shaw's Supermarkets, Inc. (Shaw's). Shaw's informed him that the job required a strong, healthy back and involved repetitive heavy lifting of from five to 100 pounds during an eight-hour shift. Delgiacco underwent a physical examination and completed a medical history questionnaire in connection with the application. Question three in the questionnaire asked, "Are you troubled by pains in the back or shoulder?" Question four asked, "Have you ever had a back problem?" Delgiacco answered "no" to both questions. The examining physician relied on those answers and certified to Shaw's that Delgiacco was physically able to perform the job of warehouseman.

Shaw's hired Delgiacco for the job. The judge found that, in so doing, Shaw's relied on Delgiacco's answers in the questionnaire. In fact, Delgiacco had filed six claims against prior employers for work-related back injuries occurring between May 5, 1982, and February 7, 1986. On July 13, 1987, another doctor had opined that Delgiacco "has a permanent disability in his back . . . he will never be able to perform heavy work again." The six claims were resolved by lump sum settlement on April 14, 1988. Delgiacco never informed Shaw's or Shaw's examining physician about this history. The judge found that Delgiacco knew that the answers he gave in the questionnaire were false and was aware that, if Shaw's knew about the prior injuries, it would not have hired him.

On Delgiacco's fifth day of work, he fell over a pallet and injured his back. He did not report the injury until six days later. He collected workers' compensation benefits from Lib-

erty Mutual Insurance Company (Liberty Mutual), Shaw's workers' compensation carrier, in the amount of $11,115. In August, 1988, Shaw's and Liberty Mutual discovered the prior injuries for which Delgiacco had received compensation. Shaw's terminated his employment and Liberty Mutual terminated his benefits.

Shaw's and Liberty Mutual filed a complaint in the Superior Court pursuant to G. L. c. 152, § 14, seeking declarations that Delgiacco fraudulently misrepresented his physical condition to Shaw's, that the termination of employment was warranted, that the termination of his compensation payments was warranted, and that Shaw's and Liberty Mutual are entitled to receive reimbursement for fraudulent compensation claims, costs of the proceedings, attorneys' fees, and a penalty in an amount not less than three times the average weekly wage in the Commonwealth. See G. L. c. 152, § 14.

The judge ruled that Delgiacco procured his position with Shaw's by fraud, that his contract of employment therefore was void ab initio, and that the benefits were obtained fraudulently. The judge ordered Delgiacco to reimburse $11,115, the amount of benefits received, to Liberty Mutual, with interest and costs. The judge also awarded the plaintiffs attorneys' fees. Delgiacco appealed to the Appeals Court and we transferred the case to this court on our own motion.

A contract induced by fraudulent misrepresentations is voidable, not void. See *Berenson* v. *French*, 262 Mass. 247, 260-261 (1928); *Joseph Martinelli & Co.* v. *Simon Siegel Co.*, 176 F.2d 98, 100 (1st Cir. 1949); Restatement (Second) of Contracts § 164 (1981). The rule applies in the employment context as well. See *Still* v. *Norfolk & W. Ry.*, 368 U.S. 35, 45 (1961); *Long* v. *Big Horn Constr. Co.*, 75 Wyo. 276, 282 (1956); 1C A. Larson, Workmen's Compensation § 47.53 (1986). Cf. *Garnhum's Case*, 348 Mass. 87, 88-90 (1964) (rejecting contention that compensation must be denied because employee's status as minor rendered employment contract void). Delgiacco was Shaw's employee at the time of the injury, although his misrepresentation would have justified a rescission of the employment contract. See *Cherry*

v. *Crispin*, 346 Mass. 89, 92 (1963). Generally, this issue is not analyzed on the ground that the contract was void ab initio. See note 2, *infra*. We thus consider whether, despite that misrepresentation, Delgiacco is entitled to receive benefits.

In his treatise on workers' compensation law, Professor Larson notes the emergence of a three-part "common-sense rule" governing claims by employees who obtained employment by misrepresentation. In order for such a misrepresentation to bar benefits, the following factors must be found: "(1) The employee must have knowingly and wilfully made a false representation as to his physical condition. (2) The employer must have relied upon the false representation and this reliance must have been a substantial factor in the hiring. (3) There must have been a causal connection between the false representation and the injury." 1C A. Larson, Workmen's Compensation Law § 47.53 (1986).

A large number of jurisdictions have adopted the so-called "Larson rule," or some form of it.[2] Those courts which have rejected the rule[3] usually do so because they can find no pro-

---

[2]See *Shippers Transp. of Ga.* v. *Stepp*, 265 Ark. 365 (1979); *Air Mod Corp.* v. *Newton*, 59 Del. 148 (1965); *Martin Co.* v. *Carpenter*, 132 So. 2d 400 (Fla. 1961); *Ledbetter* v. *Pine Knoll Nursing Home*, 180 Ga. App. 654 (1986); *Blanton* v. *Workmen's Compensation Bd.*, 531 S.W.2d 518 (Ky. 1975) (Larson rule codified in statute); *Jewison* v. *Frerichs Constr.*, 434 N.W.2d 259 (Minn. 1989); *Emerson Elec. Co.* v. *McLarty*, 487 So. 2d 228 (Miss. 1986); *Hilt Truck Lines, Inc.* v. *Jones*, 204 Neb. 115 (1979); *Martinez* v. *Driver Mechenbier, Inc.*, 90 N.M. 282 (Ct. App. 1977); *Cooper* v. *McDevitt & Street Co.*, 260 S.C. 463 (1973); *Federal Copper & Aluminum Co.* v. *Dickey*, 493 S.W.2d 463 (Tenn. 1973); *Mc-Daniel* v. *Colonial Mechanical Corp.*, 3 Va. App. 408 (1986); *Long* v. *Big Horn Constr. Co*, 75 Wyo. 276 (1956). The cases do not analyze the denial of benefits on the theory that the employment contract was void ab initio.

[3]See *Still* v. *Norfolk & W. Ry.*, 368 U.S. 35 (1961) (Federal Employers' Liability Act); *Newport News Shipbuilding & Dry Dock Co.* v. *Hall*, 674 F.2d 248 (4th Cir. 1982) (Longshoremen's and Harbor Workers' Compensation Act); *Marriott Corp.* v. *Industrial Comm'n of Ariz.*, 147 Ariz. 116 (1985); *Robinett* v. *Enserch Alaska Constr.*, 804 P.2d 725 (Alaska 1990) (codification of Larson rule not applied retroactively); *Kraus* v. *Artcraft Sign Co.*, 710 P.2d 480 (Colo. 1985); *Teixeira* v. *Kauikeolani Children's Hosp.*, 3 Hawaii App. 432 (1982); *Fontenot* v.

vision in their workers' compensation laws which authorizes
the denial of compensation based on misrepresentation in se-
curing employment. We therefore turn to G. L. c. 152 to de-
termine whether the Legislature intended to provide compen-
sation to workers who obtain employment through fraud.

General Laws c. 152, § 27 (1990 ed.), provides: "If the
employee is injured by reason of his serious and· wilful mis-
conduct, he shall not receive compensation . . . ." In our
view, this provision extends to the kind of misconduct encom-
passed by the Larson rule. The first prong of the Larson test
— that the employee must have knowingly and wilfully made
a false representation about his or her physical condition —
ensures that the misrepresentation meets § 27's "serious and
wilful misconduct" standard. The second and third prongs —
that the employer substantially relied on the misrepresenta-
tion in hiring the employee and that there be a causal con-
nection between the misrepresentation and the injury —
serve to determine whether the injury is "by reason of" the
misconduct. Therefore, when the three Larson criteria are
met, the employee's misrepresentation amounts to serious
and wilful misconduct causing injury, and the Legislature
has precluded compensation under § 27.

Moreover, the strong antifraud policy evident elsewhere in
c. 152 further convinces us that the Legislature did not in-
tend to provide compensation in the face of such a misrepre-
sentation. Section 14 (1) assesses the entire cost of workers'
compensation proceedings on a party who brings, prosecutes,
or defends a claim without reasonable cause. When the claim
is brought, prosecuted, or defended with the intent to de-
fraud, § 14 (2) assesses the party with costs, attorneys' fees,
and a penalty of not less than three times the average weekly

*Cagle Chevrolet, Inc.*, 417 So. 2d 1338 (La. Ct. App.), cert. denied, 421
So. 2d 1125 (La. 1982); *Dressler* v. *Grand Rapids Die Casting Corp.*, 402
Mich. 243 (1978); *Goldstine* v. *Jensen Pre-Cast*, 729 P.2d 1355 (Nev.
1986); *Harris* v. *Syracuse Univ.*, 168 A.D.2d 791 (N.Y. 1990); *H.J. Jef-
fries Truck Line* v. *Grisham*, 397 P.2d 637 (Okla. 1964); *Stovall* v. *Sally
Salmon Seafood*, 306 Or. 25 (1988); *Blue Bell Printing* v. *Workmen's
Compensation Appeal Bd.*, 115 Pa. Commw. 203 (1988).

wage in the Commonwealth. Given this clear indication that the compensation procedure is not to be abused, we believe that the Legislature intended to preclude workers' compensation in cases in which an employee's deliberate misrepresentation leads to injury. Therefore, we conclude that, with respect to fraud in the procurement of employment, the Larson rule's three-part test determines when § 27 bars compensation.

The judge made specific findings with regard to the first two parts of the test. The judge found that Delgiacco intentionally misrepresented his health condition to Shaw's, and that Shaw's relied on the misrepresentation as a substantial and material factor in the hiring. The judge did not, however, determine whether there was a causal connection between the misrepresentation and the injury. The plaintiffs have the burden of proving each of the three prongs of the Larson test. See *Sanchez* v. *Memorial Gen. Hosp.*, 110 N.M. 683, 686 (Ct. App.), cert. denied, 110 N.M. 653 (1990); *Emerson Elec. Co.* v. *McLarty*, 487 So. 2d 228, 230 (Miss. 1986); *Ledbetter* v. *Pine Knoll Nursing Home*, 180 Ga. App. 654, 655 (1986).[4] Therefore, despite the expert medical testimony in evidence that the causal connection between the misrepresentation and the injury existed, we must remand the case for a determination of this issue.

If the judge concludes that the third prong of the test (causal relationship) is satisfied, then the question of damages arises. The judge ordered Delgiacco to reimburse Liberty Mutual the amount of the award, plus interest and costs. The judge also awarded attorneys' fees to the plaintiffs. The judge did not refer to the penalty authorized under § 14 (2). Under § 27, if the judge finds that Delgiacco's misrepresentation was causally connected to his injury, Liberty Mutual is entitled to reimbursement of the compensation paid plus interest. As for costs, they are authorized under § 14 (1) only

---

[4]Delgiacco claims that the judge found that his most recent injury was a new injury and unrelated to his prior back problems. The judge made no such finding. She found only that "[o]n the fifth day on the job, [Delgiacco] fell over a pallet and injured his back."

if proceedings are brought or defended without reasonable ground. Given that neither we nor the Appeals Court had ruled, prior to this case, on whether misrepresentation in the procurement of employment bars compensation, and given the substantial number of jurisdictions holding that compensation is required even when the injury and misrepresentation are causally connected, see note 3, *supra*, it cannot fairly be said that this claim was defended without reasonable cause.

Section 14 (2) requires the imposition of costs, attorneys' fees, and a penalty on a party who brings, prosecutes, or defends workers' compensation proceedings "with the intent to defraud." The judge found that Delgiacco intended to defraud Shaw's in obtaining employment. Because the evidence offered did not support an intent to defraud in seeking benefits, the costs and attorneys' fees awarded cannot stand.

The judgment is reversed, the award of costs and attorneys' fees vacated, and the case is remanded for further proceedings in accordance with this opinion.[5]

*So ordered.*

---

[5] In the interest of judicial economy, this matter should be heard by the trial judge. On remand, it is within the judge's discretion whether to receive additional evidence to determine whether the injury was causally related to the misrepresentation or make that determination on the existing record. See *Nagle's Case*, 310 Mass. 193, 197-198 (1941); *Steranko v. Inforex, Inc.*, 8 Mass. App. Ct. 523, 527 (1979).