Fremont-Smith, Thayer, J.
*641 Introduction
This case concerns a properly management company that contracted with an in-house real estate salesperson to show apartments located on several properties in Cambridge and charged a mandatory finder’s fee to any person interested in leasing an apartment on the property. During the relevant time period, the real estate salesperson, defendant Sandra Lee (“Lee”), allowed her license to lapse. Plaintiffs, Rev. H. Bowen Woodruff (“Woodruff’) and Kimberly Genereux (“Genereux”), have brought this action claiming that Lee and the property management company, defendant Niles Company (“Niles"), breached their contracts, misrepresented certain material facts to the plaintiffs, and violated the following statutes: G.L.c. 93A, G.L.c. 186, §15B (“Security Deposit Law”), and G.L.c. 112, §87DDDl/2 (“Licensing Statute”). Genereux also seeks damages for interfering with the quiet enjoyment of her residence.
The undisputed facts as gleaned from the summary judgment record are summarized below.
Defendant Niles was the property management company for several properties located in Cambridge. In June 2001, Lee signed an employment agreement with Niles. The agreement[3] described Lee’s position as a “residential real estate salesperson,” and specified that she was not an employee for federal and sales tax purposes. Lee’s compensation was based on a commission she generated from sales and rentals in Cambridge, which she shared with Niles. She was responsible for maintaining her licensing. She worked from a Niles company office and used business cards provided by Niles, which had Niles’s logo and described her title as “broker.”
Lee’s license expired and was not in effect from September 27, 2001 to November 17, 2003. Her license was subsequently revoked in December 2004.
On June 15, 2002, when Lee’s license was expired, Woodruff applied to lease a unit at a Niles-managed property. Although Lee did not assist him in locating the apartment, he was required to pay a finder’s fee of $1,200.00 (one month’s rent) to secure the apartment.[4] Woodruff also paid the first and last month’s rent, but he was not required to pay a security deposit.
In May 2003, also during the period when Lee’s license was expired, Genereux applied to lease an apartment at a Niles-managed property. She signed a Rental Brokerage Fee Disclosure Agreement (“Brokerage Agreement") and paid $2,200 (one month’s rent) for assistance in finding the apartment. Genereux claims that Lee only spent ten to twenty minutes showing her a few apartments that she could have seen on her own. Niles required her to pay the finder’s fee in order to secure the apartment. She also paid the first and last month’s rent, but she was not required to pay a security deposit.
At some point, Genereux discovered that Lee was unlicensed and confronted Lee regarding her status. Genereux claims that Lee informed her that her license was under a different name, Sandra Tanco, with license number 130465. That license number did not match the one listed on the brokerage agreement— 64482, and Sandra Tanco was actually another person. Later, another employee told Genereux that Niles had misplaced her finder’s fee check. Genereux stopped payment on her check, which cost her $35 in bank fees. In November 2003 Niles returned her undeposited check for $2,200, and agreed to waive the finder’s fee as a courtesy, although Genereux alleges that payment of the finder’s fee was demanded again.
While Genereux leased the apartment, someone with access to apartment keys was wrongfully entering the Niles-managed apartments. Also, Genereux received several “hang-up phone calls” that she attributed to Lee. Because of this and other incidents at the apartments, she alleged that she feared for her safety and suffered emotional distress. She terminated her lease in April 2006.
Defendants, Lee and Niles, have moved for summary judgment with respect to all of plaintiffs’ claims,[5] and plaintiffs, Woodruff and Genereux, have cross moved for partial summary judgment on their c. 186, §15B claim.
Discussion
Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Comm’r of Corr., 390 Mass. 419, 422 (1983); Cmty. Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party must affirmatively demonstrate that there is no genuine issue of material fact on each relevant issue. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). A “material” fact is one that might affect the outcome of the suit under the applicable law. Muluihill v. The Top-Flight Golf Co., 335 F.3d 15, 19 (1st Cir. 2003). “Genuine” means that the evidence would permit a reasonable fact finder to resolve the point in favor of the nonmovant. Id.
If the moving party does not bear the burden of proof at trial, it must either: 1) submit affirmative evidence negating an essential element of the non-moving party’s claim; or 2) demonstrate that the non-moving party’s evidence is insufficient to establish its claim. Kourovacilis v. General Motors Corp., 410 Mass. 706, 711 (1991). The non-moving party may not defeat the motion for summary judgment by resting merely on the allegations and denials of its pleadings, but must set forth specific facts with affidavits, deposition testimony, answers to interrogatories, or admissions on file showing that there is a genuine issue for trial. Mass.R.Civ.R 56(e). The court will interpret all inferences in the light most favorable to the non-moving party. Blare v. Husky Injection Molding Sys. Boston, Inc., 419 Mass. 437, 438 (1995).
*642 Count I — Breach of Contract
Niles and Lee argue that the plaintiffs cannot establish a breach of contract claim because the defendants performed under the contract so that the plaintiffs received the services they bargained for, namely, assistance in finding housing accommodations. Moreover, the defendants claim that plaintiffs have no damages.
Defendants are correct that there can be no breach of contract if the defendant has fully performed. And once the plaintiff has accepted performance, the plaintiff cannot complain that such performance was a breach. See Cueroni v. Coburnville Garage, Inc., 315 Mass. 135, 139 (1943). Here, Lee provided brokerage services to Genereux. Even though the services were minimal and she was unlicensed, with Genereux the terms of the contract were substantially performed, as she assisted her in finding an apartment and the landlord accepted her application for housing. In short, she received the services that she bargained for. On the other hand, Woodruff contends that he had already chosen his apartment and that Lee did nothing to assist him. In these circumstances, it could be found that Lee’s end of the agreement was not performed, so that he can recover his fee.
As for Genereux, even if fully performed, a contract can be voided for a fraudulent or material misrepresentation, Shaw’s Supermkts, Inc. v. Delgiacco, 410 Mass. 840, 842 (1991), and a contract can be held unenforceable if its performance is illegal. Toed v. Lembo, 325 Mass. 707, 710. Here, there is at least a genuine issue of material fact as to whether Lee falsely represented herself as a licensed person and as to whether Niles knew or should have known that Lee was unlicensed at the time. Zimmerman v. Kent, 31 Mass.App.Ct. 72, 77 (1991) (a defendant does not need to know “that the statement is false if the truth is reasonably susceptible of actual knowledge”).
Moreover, here the brokerage agreements were mandatory, in that, regardless of whether the brokerage services were needed or requested, all prospective tenants were required to pay a finder’s fee. A mandatory fee irrespective of any substantial performance on the part of the real estate sales person would seem to contravene the purpose of a brokerage agreement. This is especially pertinent where the plaintiffs, as prospective tenants, are in inferior bargaining positions. See Hastings Assocs., Inc. v. Local 369 Bldg. Fund, Inc., 42 Mass.App.Ct. 162, 175 (courts will weigh the totality of circumstances in considering whether to invalidate an illegal contract).
Were the contract to be found to have been fraudulently induced or illegal, so as to void the contract, plaintiffs could recover their “out of pocket” expenses caused thereby. “The purpose of the remedy is to restore the status quo as if the transaction had never occurred.” Zimmerman v. Kent, 31 Mass.App.Ct. 72, 82 (1991). Here, Woodruff paid a finder’s fee of $1,200 in order to rent his apartment, which Niles never returned. Although it is contended that Genereux’s finder’s fee was returned to her, Genereux paid a $35 stop payment on her “finder’s fee" check when Niles initially told her that they had lost her check. These damages could be found to be a natural consequence and proximate result of Niles’ conduct. See Danca v. Taunton Sav. Bank, 385 Mass. 1, 9 (1982).
Accordingly, summary judgment is inappropriate as to Count I.
Count II — Security Deposit Law
G.L.c. 186, §15 precludes a landlord from charging any amount in excess of the rent for first and last month of occupancy, a security deposit equal to the first month’s rent, and the cost of the purchase and installation for key and lock. The statute outlines the manner in which the security deposits are accepted, retained, and returned. Defendants argue that the brokerage fee is not governed by the statute and serves a wholly distinct purpose — for a rental agent’s assistance in obtaining housing accommodations. They further argue that charging the fee does not run afoul of the statute because the landlord did not require a security deposit from prospective tenants.
As stated in 33A Mass. Practice Series, Landlord and Tenant Law 14:10, p. 172, “[A] landlord, who attempts to charge a fee in excess of that provided by the security deposit law, runs afoul M.G.L.A.c. 186, §15B.” A tenant cannot waive the statute’s limits on fees. Id. at 14:10, p. 173. While the landlord did not require a security deposit, it did require a brokerage fee for all apartments regardless of any need for such services. Woodruff located the apartment on his own, and Genereux did not require much, if any services to find her apartment.
Thus, genuine issues of material fact are in dispute as to whether or not defendants circumvented the security deposit law by charging mandatory finder’s fees to prospective tenants, which makes summary judgment inappropriate as to Count II.
Count III — Licensing Statute
G.L.c. 112, §87DDD1/2 requires that a person must be a licensed broker or real estate salesperson to charge a fee to prospective tenants for finding dwelling accommodations. Defendants argue that this licensing statute expressly provides remedies for violating its requirements, and plaintiffs do not have a private right of action. Generally, courts have been reluctant to infer a private right of action from a statute unless the legislative history indicates legislative intent to create such a right. All Brands Container Recovery, Inc. v. Merrimack Valley Distributing Co., 54 Mass.App.Ct. 297, 300-03 (2002) (no implied right of action in bottle bill, given the inclusion of an “express public enforcement provision,” and the absence of any indication of legislative intent to create a private right).
*643 While the licensing statute does include some enforcement provisions, the provisions do not include an express public enforcement provision as in All Brands. See G.L.c. 112, §§87AAA, 87BBB-87CCC. Moreover, the maximum fine for violating the statute is $500. G.L.c. 112, §87CCC. This is substantially less than what each prospective tenant paid to lease the apartments. In these circumstances, where there are not sufficient enforcement provisions that would protect prospective tenants against the collection of illegal fees, the court cannot, at this stage, infer that the legislature intended to preclude private actions by such tenants.
Moreover, tenants are generally regarded as being in “inferior bargaining positions” to landlords, and the legislature has manifested a concern for tenants in other statutes concerning their ability to seek redress for landlord/tenant contracts. Hampshire Village Associates v. District Court of Hampshire, 381 Mass. 148, 152-53 (1980) (upholding treble damages for withholding return of security deposit to tenant as required by c. 186, §15B). See also Berdos v. Tremont & Suffolk Mills, 209 Mass. 489, 492 (1911) (“It is a general rule of statutory interpretation that a violation of a duty created by a statute, resulting in damage to one of the class for whose benefit the duty was established, confers a right of action upon the injured person”).
There is also a genuine issue of material fact as to whether Lee falsely represented herself as a licensed person to plaintiffs, which may affect whether recovery will be allowed under the licensing statute. See Annot., 74 A.L.R.3d 637, 646 (1976) (recovery may be allowed where the payee falsely represented to be licensed).
As the Court concludes that, in these circumstances, there may well be a private right of action under the licensing statute, and genuine issues of material fact are in dispute as to whether or not defendants falsely represented Lee as a licensed person, summary judgment is inappropriate as to Count III.
Count IV — Misrepresentation Claim
As discussed above, there are genuine issues of material fact in dispute as to whether or not defendants misrepresented Lee’s status as a licensed broker. Lee was unlicensed when the brokerage agreements were signed by plaintiffs. Genereux contends that after she discovered that Lee was unlicensed, Lee claimed she was licensed under her married name, Sandra Tanco. It is alleged, however, that Sandia Tanco is an entirely different broker who lives in Cape Cod, so that this was an additional misrepresentation.
There is also a genuine question as to whether or not Niles clothed Lee with apparent authority to act as his agent or whether Niles knew or should have known of misrepresentations by Lee, so as to make Niles also liable for such misrepresentations. See Zimmerman, supra, at 77.
For plaintiffs to recover damages for misrepresentations, they must “prove actual losses suffered as a foreseeable consequence of the misrepresentation.” Town of Lynnfield v. Gagnon Welding & Contracting Corp., No. 00-P-1562 (App.Ct. December 2002), slip op. at 2. Woodruff paid a finder’s fee for his apartment. While Genereux’s finder’s fee was ultimately returned, she paid, as a result of the transaction, a $35 stop payment on her “finder’s fee” check when Niles told her that they lost her check.
Thus, genuine issues of material fact are in dispute as to whether or not defendants’ conduct was intended to mislead the plaintiffs, and whether plaintiffs reasonably relied on such misrepresentations to their detriment. See Zimmerman, supra, at 79-82.
Count V — Chapter 93A
Whether plaintiffs have made out a c. 93A claim depends on the particular circumstances of the particular case. “[The] unfairness is to be measured not simply by determining whether particular conduct is lawful apart from G.L.c. 93A but also by analyzing the effect of the conduct on the public . . . The fact that particular conduct is permitted by statute or by common law principles should be considered, but it is not conclusive on the question of unfairness.” Schubach v. Household Finance Corp., 375 Mass. 133, 137 (1978) (citations omitted). As noted above, the legality of the conduct here is questionable. Moreover, plaintiffs contend that they were required to pay a finder’s fee to secure housing accommodations in Niles-managed properties, even though the brokerage services in both cases are alleged to have been minimal, if not nonexistent. And it appears to be undisputed that during the relevant period, the salesperson was not licensed as a broker/salesperson as required by the licensing statute and as represented.
Thus, genuine issues of material fact are in dispute as to whether or not defendants committed unfair or deceptive acts in charging these finder’s fees, which makes summary judgment inappropriate as to Count V. See generally Commonwealth v. Chatham Development, Inc., 49 Mass.App.Ct. 525 (2000) (charge of a constable fee violated security deposit law, and was an unfair and deceptive business practice under c. 93A).
Count VI — Breach of a Covenant of Quiet Enjoyment
To bring a claim for a breach of a covenant of quiet enjoyment, plaintiffs must show that the landlord seriously interfered with the tenancy. Simon v. Solomon, 385 Mass. 91, 102 (1982). The facts alleged by plaintiffs do not establish a serious interference with the tenancy by defendants. It is true that Genereux alleges that she received harassing telephone calls several times a week, and several tenants alleged they had items stolen from their apartments. She contends *644 that Niles, the managing agent of the landlord, should have addressed these security concerns. It is further alleged that Lee was arrested in April 2004 for a “brutal attack” on a tenant and that the phone calls stopped after Lee was arrested. Genereux contends that Niles should have attributed these problems to Lee, who had unfettered access to the tenant’s apartments.
These alleged facts are insufficient to permit a jury, other than by guess or supposition, to link Lee to any security concerns at the apartment complexes or to charge Niles with failure to remedy them. On the present record, there is no admissible evidence of a “serious interference” with the tenancy by Niles.[6]
ORDER
Accordingly, for the foregoing reasons, it is therefore ORDERED that defendant’s, Niles and Lee, motion for summary judgment be DENIED as to Count I (breach of contract), Count II (G.L.c. 186, §15B (the Security Deposit Law)), Count III (G.L.c. 112, §87DDD1/2 (the Licensing Statute)), Count IV (claim for misrepresentation), and Count V (G.L.c. 93A). The motion for summary judgment as to Count VI (claim for breach of covenant for quiet enjoyment) is ALLOWED.

Exhibit 3 — "Defendant Niles’s Statement of Undisputed Facts and Statement of Legal Elements."

It is not clear whether Woodruff signed a Rental Brokerage Fee Disclosure Agreement.

At oral argument, defendants withdrew their motion for summary judgment on plaintiff Woodruff s claim under G.L.c. 186, §15B.

The situation does not rise to the level of interference with quiet enjoyment alleged in Doe v. Bedford Hous. Auth., 417 Mass. 273, 284-86 (1994), where the court found there could be a claim for breach of quiet enjoyment where tenants were “plagued” by unlawful drug activity in the sidewalks, streets, parking lots, and recreational areas, to the extent that they alleged the “loss of sidewalks, streets, parking lots, and recreational areas ‘controlled’ by the landlord.”