# United States Court of Appeals
## For the First Circuit

No. 11-2274

MARILYNN PILALAS,

Plaintiff, Appellant,

v.

THE CADLE COMPANY and CADLEROCK JV II, LP,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. George A. O'Toole, Jr., U.S. District Judge]

Before

Boudin, Hawkins[*] and Dyk,

Circuit Judges.

Jan R. Schlichtmann for appellant.
David H. Rich with whom Michael Thad Allen, Todd & Weld, LLP,
Mark H. Bluver and Law Office of Mark H. Gluver LLC were on brief
for appellees.

September 12, 2012

---

[*]Of the Ninth Circuit, sitting by designation.

**BOUDIN**, **Circuit Judge**. Marilynn Pilalas, a resident of Pembroke, Massachusetts, challenges the district court's grant of summary judgment dismissing claims she brought against the Cadle Company ("Cadle Company") and its corporate sibling CadleRock Joint Venture II, L.P. ("CadleRock") for unlawful debt collection under Massachusetts law; collectively, we refer to them both as "Cadle" where the distinction does not matter. The facts of this case are not seriously at issue and may be summarized briefly.

Some time before 1998, Marilynn Pilalas' husband, Nicholas Pilalas, opened a credit card account with Bank of New York. The account eventually became delinquent and was ultimately purchased by the Cadle Company, which assigned it to a closely related entity, CadleRock. Cadle began telephoning Nicholas Pilalas to demand that he pay what was due. Despite occasional partial payments, he died on December 10, 2002, leaving an unpaid balance of somewhat more than $5,000.

Cadle took the position that Marilynn Pilalas was responsible for the balance, although (according to Marilynn Pilalas) Cadle refused to explain why.[1] She paid installments but only sporadically for several years; eventually, in May 2005, CadleRock sued her in Massachusetts state court for "the principal

---

[1]CadleRock's state-court complaint can be read as saying that Marilynn Pilalas was a co-signatory to the credit card agreement; it says that "Pilalas"--referring to Marilynn--"entered into a credit agreement." Whatever the explanation, neither side offers any illumination and it is not an issue on this appeal.

balance of $5,534.28 and accrued interest due through March 7, 2005 of $3,136.93," plus costs and attorney's fees.

After discovery began, CadleRock offered to settle based on an extended payment plan under which Pilalas would pay $4,400.00 in consecutive monthly installments of $100--just over 50 percent of what the company claimed she owed including accrued interest; in addition to the reduced payments, CadleRock sought a release that barred all actions against CadleRock and its affiliated companies for any claims "remotely attributable or related to" the debt. Specifically, the release provided that Pilalas, as the obligor,

> agree(s) to execute this Release in favor of [Bank of New York Delaware], CadleRock Joint Venture II, L.P. and its affiliates ("Released Parties"), as third-party beneficiaries. Obligor(s), his/her/their, heirs and assigns, for itself, its successors and assigns (as the appropriate case may be), hereby releases, acquits and forever discharges the Released Parties, their agents, servants and employees, and all persons and entities in privity with them or any of them, from any and all claims or causes of action of any kind whatsoever, at common law, statutory or otherwise, which Obligor(s) and those on whose behalf Obligor(s) sign(s) has, have or might have, whether known or unknown, now existing or arising hereafter, directly, indirectly, or remotely attributable or related to the above described Note(s) and/or Judgment(s), this Release being intended and understood to release all present and future claims of any kind which Obligor(s) and those on whose behalf Obligor(s) sign(s) might have against those hereby released, arising from or growing out of any act or omission occurring prior to the date of this Release.

Acting without counsel, Marilynn Pilalas signed the release on August 9, 2005, and a week later she and CadleRock's attorney signed a stipulation of dismissal of the pending state court suit. Over the next two and a half years, Marilynn Pilalas continued making regular payments. She missed a few payments, but largely performed as agreed and did not hear from any of the Cadle entities.

Then, in April 2008, Marilynn Pilalas lost her job. She failed to make a payment that month, and in July, she stopped sending payments entirely. At that point, she had paid 31 of the 44 agreed-upon installments. Again, Marilynn Pilalas heard nothing from the Cadle entities despite her outstanding obligation of $1,300 under the settlement. Indeed, the Cadle entities have not contacted Marilynn Pilalas at all following their August 2005 settlement.

Sixteen months after sending her last payment, on November 16, 2009, Marilynn Pilalas filed a putative class action suit in Massachusetts Superior Court, naming Cadle, CadleRock, their common principal Daniel Cadle, and a host of related entities as defendants. She advanced a series of charges under state law and sought restitution, damages of various kinds including treble damages, declaratory and injunctive relief, and costs and attorneys' fees.

The defendants removed the case to federal court. Marilynn Pilalas' effort to have the matter remanded to state court failed and the defendants were whittled down to the Cadle Company and CadleRock, but the details do not matter as neither is an issue on appeal. The two defendants moved for summary judgment which, accepting the recommendation of the magistrate judge, the district court eventually granted. Marilynn Pilalas now appeals to this court.

We review de novo the issues of law on which this case turns. Vélez v. Thermo King de Puerto Rico, Inc., 585 F.3d 441, 446 (1st Cir. 2009). Those issues arise under provisions of Massachusetts law that govern both consumer fraud, Mass. Gen. Laws ch. 93A, § 2 (2010), and debt collection, id. ch. 93, §§ 24-24A, as well as a closely related provision establishing civil remedies for consumer fraud, id. ch. 93A, § 9, specifically including unlawful debt collection, id. ch 93, § 28. Also pertinent are statutes of limitation that govern potential claims. Id. ch. 260, §§ 2A, 5A. A central aspect of the debt collection provisions makes unlawful "debt collection" (as defined in the statute) except when carried out by certain exempted parties. Id. ch. 93, §§ 24-24A.

Marilynn Pilalas' position throughout has been that Cadle engaged in unlawful debt collection and that the release itself was obtained by fraud and illegal debt collection. However, the limitations period under state law is three years for fraud claims,

Mass. Gen. Laws ch. 260, § 2A, and four years for chapter 93A claims, id., § 5A. Marilynn Pilalas filed her complaint on November 16, 2009, so the four-year statute reaches back only to November 2005.

It is quite possible--and we will assume arguendo in Marilynn Pilalas' favor--that Cadle engaged in unlawful debt collection by pursuing Marilynn Pilalas prior to its collection lawsuit and the release that followed. Broadly speaking, the statute, described in more detail below, forbids unlicensed debt collection by anyone whose "principal" business is debt collection and who seeks to collect by use of telephone or mails; it arguably applies as well to anyone seeking to collect a debt in default purchased from the original creditor. Mass. Div. of Banks, Industry Letter Concerning the Massachusetts Debt Collection Statutes, and its Applicability to Debt Buyers, So Called (June 16, 2006).

At the time it sought to collect from Marilynn Pilalas, Cadle (it appears) was neither licensed nor within a statutory exception. It had been sent a cease-and-desist letter for unlicensed debt collection in 2003 and later denied a license. The Cadle Co. v. Mass. Div. of Banks, SUCV2004-0101C, 2006 WL 4119647, at *2 (Mass. Super. Ct. Nov. 17, 2006), aff'd, 888 N.E.2d 385 (Mass. App. Ct. 2008) (table). Ultimately, the attorney general

secured a consent judgment against it.  Commonwealth v. The Cadle Co., No. 07-05359-D (Mass. Super. Ct. Nov. 17, 2009).

Nevertheless, Marilynn Pilalas chose to settle the lawsuit, agreeing to pay about half of the claimed debt and giving a release to the defendants from all claims she might have against them, present and future.  The release might be unenforceable under state law as to claims arising after the release, at least for regulatory and fraud claims.  See Feeney v. Dell Inc., 908 N.E.2d 753, 761-66 (Mass. 2009); Bates v. Southgate, 31 N.E.2d 551, 558 (Mass. 1941).  However, the release by its terms does extinguish pre-release claims by Marilynn Pilalas, including civil claims for unlawful debt collection, unless it is somehow invalid.

Had Cadle secured the release through fraudulent misrepresentation, it would be voidable, Shaw's Supermarkets, Inc. v. Delgiacco, 575 N.E.2d 1115, 1117 (Mass. 1991), but the district court found no basis for Marilynn Pilalas' allegations that the release was secured by fraud.  Similarly, some forms of coercion conceivably might render the release voidable, see Cabot Corp. v. AVX Corp., 863 N.E.2d 503, 511-12 (Mass. 2007), but Marilynn Pilalas does not attempt to make any detailed showing along these lines.

In all events, "one seeking to repudiate an agreement allegedly entered into under duress must promptly complain of the circumstances under which the document was signed."  In re Bos.

-7-

Shipyard Corp., 886 F.2d 451, 455 (1st Cir. 1989). Here, Marilynn Pilalas entered into the release in 2005, performed under it for several years, was not again approached by the company even when she ceased to perform, and waited over four years before bringing the present suit, thereby attacking the release. Courts have rejected such claims as untimely even with much shorter delays. E.g., id. (eighteen month delay deemed untimely).

Marilynn Pilalas settled Cadle's suit apparently without advice from counsel, and it is a defect of our legal system that, absent attorneys' fee provisions (rarely of much help to those who are sued), only the well-to-do, or the very poor who may get legal aid, can afford complex civil litigation. But Massachusetts is not claimed to have any rule against a pro se litigant litigating or settling a consumer claim or lawsuit, even though such litigants rarely understand fully or even adequately their legal rights. And the inability to settle would in some cases disadvantage pro se litigants.

Marilynn Pilalas says that she did not know that Cadle's original debt collection efforts were unlawful; but the release on its face embraced all claims "whether known or unknown, now existing or arising hereafter, directly, indirectly, or remotely attributable or related to the above described Note(s) and/or Judgment(s) . . . ." Such "broad wording" releases all claims, "even if they were not specifically in the parties' minds at the

time the release was executed." Eck v. Godbout, 831 N.E.2d 296, 300-01 (Mass. 2005); see also Naukeag Inn, Inc. v. Rideout, 220 N.E.2d 916, 918 (Mass. 1966).[2]

This brings us to the question whether, given the release of past claims, anything that occurred in or after November 2005, restores or gives rise to a claim by Marilynn Pilalas. Massachusetts defines a debt collector as

> any person who uses an instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of a debt, or who regularly collects or attempts to collect, directly or indirectly, a debt owed or due or asserted to be owed or due another.

Mass. Gen. Laws ch. 93, § 24. Those not subject to an exception (e.g., attorneys collecting on behalf of clients, id., § 24(g)) may not "directly or indirectly engage in the commonwealth in the business of a debt collector" unless licensed, id. § 24A(a).

The aim of the statute is to bring such non-exempt debt collectors within a regulatory regime, primarily under the supervision of the Massachusetts banking regulators, Mass. Gen. Laws ch. 93, § 24A(d), with further enforcement by the Commonwealth's attorney general, id., §§ 28, 49; id. ch. 93A, § 2(c). On a more practical plane, the statute aims to curb the

---

[2]There is no exemption from ordinary rules and practices in Massachusetts for pro se litigants, whether in criminal or civil cases. Commonwealth v. Jackson, 647 N.E.2d 401, 405 (Mass. 1995); Leblanc v. Friedman, 781 N.E.2d 1283, 1288-89 (Mass. 2003).

incessant telephone calls, mailings, and even home visits associated with aggressive debt collection. Cf. Baldassari v. Pub. Fin. Trust, 337 N.E.2d 701, 703-04 (Mass. 1975) (superseded by statute, St. 1979, c. 406, § 1, as recognized in Leardi v. Brown, 474 N.E.2d 1094, 1100-01 (Mass. 1985)).

Standing alone, passively receiving a payment is seemingly not within the Massachusetts statute. Although the term "collect" could be extended from demanding payment to merely receiving it, see, e.g., Collins English Dictionary (10th ed. 2009), passive receipt does not involve the vices of harassment that the statute aims to suppress and, more important, the Massachusetts banking authorities who enforce the statute have read it more narrowly, explaining that

> a debt buyer who purchases debt in default but is not directly engaged in the collection of these purchased debts is not required to obtain a debt collector license provided that all collection activity performed on behalf of such debt buyer is done by a properly licensed debt collector in the Commonwealth or an attorney-at-law licensed to practice law in the Commonwealth.

Mass. Div. of Banks, Op. Letter 06-060 (Oct. 13, 2006) (second emphasis added).

However, passive receipt might be deemed tainted if prompted by prior unlawful collection efforts by the creditor, and this appears to be the position of the Massachusetts attorney general: the later consent judgment against Cadle prohibited

-10-

unlicensed debt collection, defined primarily as "request[ing] payment on a debt," while allowing "accepting payment on a debt, provided that such payment has not been preceded by unlicensed debt collection." Commonwealth v. The Cadle Co., No. 07-05359-D (Mass. Super. Ct. Nov. 17, 2009).

The present suit is not one by the attorney general to enforce the consent decree; nor is Marilynn Pilalas faced merely with a statute of limitations objection that she might overcome (some might think oddly) by herself making payments to Cadle under the settlement as late as 2008, the year before she began the present suit. For in both cases the lynchpin of the argument against Cadle would be the wrongfulness of Cadle's active debt collection efforts prior to the 2005 lawsuit and the impermissibility of reaping the fruits afterwards.

However, this case is different because Marilynn Pilalas entered into a settlement and furnished a release. The settlement created a new obligation to pay $4,400; the release surrendered, from the standpoint of any further civil recovery by Marilynn Pilalas, any damages from any wrongful active debt collection activity by Cadle that preceded the release. And the settlement and release are no longer vulnerable to attack by her--or at least Marilynn Pilalas has offered no convincing conventional basis (fraud, duress) and no ground for her delay in asserting any basis she had.

-11-

Thus, the present lawsuit is simply a back-door attack on and disregard of both the settlement and the release. Agreeing to pay a much reduced claim against her and granting a release to Cadle for any pre-release wrongful debt collection were the price she chose to pay to forestall Cadle's own larger claim and achieve the dismissal of its lawsuit against her. It is too late now to resuscitate claims that ultimately depend on the wrongfulness of the original debt collection efforts.

Whether any acceptance now of further payments by Cadle would get it in trouble with the attorney general under either the consent decree or the statute is not at issue; nor is it certain how a Massachusetts court would react if Cadle sought to sue to collect further payments, which it has not sought to do. As for other members of the uncertified class who may have made no settlement and granted no release, they must seek a new champion.

Affirmed.